Larry IZENBERG, Amy Izenberg, and
Elaine Freedberg, Plaintiffs,

v.

ETS SERVICES, LLC, Doe 1, and Does
2–50, inclusive, Defendants.

Case No. CV 08–06888 MMM (SSx).

United States District Court,
C.D. California.

Dec. 8, 2008.

Kristine Theodesia Takvoryan, Mitchell W. Roth, M.W. Roth PLC, Sherman Oaks, CA, for Plaintiffs.

Amber L. Harley, John M. Hochhausler, Nina Huerta, Locke Lord Bissell and Liddell LLP, Los Angeles, CA, for Defendants.

1. Complaint, ¶ 6.

2. *Id.,* ¶ 5.

3. *Id.,* ¶ 2.

4. *Id.,* ¶ 7.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MARGARET M. MORROW, District Judge.

On August 8, 2008, plaintiffs Larry Izenberg, Amy Izenberg and Elaine Freedberg commenced this action against Executive Trustee Services, LLC ("ETS"), erroneously sued as ETS Services, LLC, and various unnamed defendants in the Los Angeles Superior Court. On October 20, 2008, ETS removed the case to federal court. Seven days later, it filed a motion to dismiss plaintiffs' complaint for failure to state a claim on which relief could be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

#### A. Plaintiffs' Allegations

Plaintiffs alleges that they are the owners of real property located at 20236 Clark Street, Woodland Hills, California 91367.[1] They assert that ETS is "proceeding toward a Trustee's sale" of the property,[2] purportedly at the direction of an unnamed individual or entity identified as "Doe 1."[3] Plaintiffs contend that Doe 1 is not the holder of the note secured by a deed of trust on the property,[4] and that he does not have a legal right to foreclose.[5] Plaintiffs have allegedly notified ETS of their view that Doe 1 has no right to foreclose, and have requested that ETS suspend the foreclosure sale "unless and until it has obtained proof that Doe 1 actually has in its possession the original note properly endorsed to it or assigned to it as of a date preceding the notice of default recorded by ETS."[6] ETS has not suspended its foreclosure activities or provided plaintiffs with the requested proof.[7]

5. *Id.,* ¶ 8.

6. *Id.*

7. *Id.*

Plaintiffs assert that they have demanded that ETS provide "proof of [its] right to proceed [with the] foreclosure in writing," as well as "a detailed accounting of how the stated amount necessary to be paid to redeem the property from foreclosure has been calculated so that [p]laintiff[s] could adequately evaluate [their] rights under the law [to exercise their] presale right of redemption." [8] The complaint alleges that ETS's response to these requests has been inadequate.[9]

Plaintiffs also allege in conclusory fashion that ETS's conduct in this case is part of a "pattern and practice" of such activity. They state that "the [d]efendants and each of them, in so acting in this case and with respect to many other mortgage or trust deed security instruments engage in a pattern and practice of utilizing the non-judicial foreclosure procedures of this State to foreclose on properties when they do not, in fact, have the right to do so"; [10] that "[i]n all the wrongful acts alleged in this complaint, the [d]efendants and each of them have utilized the United States mail in furtherance of their conspiracy"; [11] and finally that "[d]efendants, and each of them, in committing the acts alleged in this and in other cases are engaging in a pattern of unlawful activity." [12]

Plaintiffs' complaint pleads claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 et seq; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 41 et seq; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.

### B. ETS's Motion to Dismiss

On October 27, 2008, ETS filed a motion to dismiss plaintiffs' complaint. ETS argues that the complaint fails to state a claim against it on which relief may be granted. It further argues that plaintiffs' fraud-based allegations are not pled with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. The court issued an order setting a briefing schedule on ETS's motion, which required that plaintiffs file opposition by November 17, 2008. As of the date of this order, plaintiffs have not opposed ETS's motion.

## II. DISCUSSION

### A. Plaintiff's Failure to File Opposition

Local Rule 7–12 provides that "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." CA CD L.R. 7–12. As noted, plaintiffs failed to file opposition by the date set forth in the court's briefing schedule order. Under Rule 7–12, the court could grant the motion on this basis alone. See *Cortez v. Hubbard*, No. CV 07–4556–GHK (MAN), 2008 WL 2156733, *1 (C.D.Cal. May 18, 2008) ("Petitioner has not filed an Opposition to the Motion and has not requested any further extension of time to do so. Pursuant to Local Rule 7–12, his failure to do so could be deemed to be consent to a grant of the Motion"); *Mack–University LLC v. Halstead*, No.

---

**8.** *Id.,* ¶¶ 10–11.

**9.** *Id.*

**10.** *Id.,* ¶ 9.

**11.** *Id.,* ¶ 13.

**12.** *Id.,* ¶ 14.

SA CV 07–393 DOC (ANx), 2007 WL 4458823, *4 n. 4 (C.D.Cal. Sept. 25, 2007) (where a party "failed to oppose or in any way respond" to a motion, the court held that "[p]ursuant to local Rule 7–12, the Court could grant Plaintiffs' Motion on this ground alone"); *Ferrin v. Bias,* No. ED CV 02–535 RT (SGLx), 2003 WL 25588274, *1 n. 1 (C.D.Cal. Jan. 2, 2003) ("Under Local Rule 7–12, failure to file an opposition may be deemed consent to the granting of the motion"). Nonetheless, the court reviews below the merits of the motion.

### B. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

■ A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). In deciding a Rule 12(b)(6) motion, the court generally looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).

■ The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996); *Mier v. Owens,* 57 F.3d 747, 750 (9th Cir.1995). It need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)

("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)).

### C. Whether Plaintiffs' Complaint States a Claim Under the FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To effectuate this purpose, the Act prohibits a "debt collector" from making false or misleading representations and from engaging in various abusive and unfair practices.

■ To be held liable for violation of the FDCPA, a defendant must—as a threshold requirement—fall within the Act's definition of "debt collector." See *Heintz v. Jenkins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); see also, e.g., *Romine v. Diversified Collection Servs.,* 155 F.3d 1142, 1146 (9th Cir.1998). The FDCPA defines "debt collector," in pertinent part, as

"any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed

or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Thus, a "debt collector" under the FDCPA is either (1) "a person" the "principal purpose" of whose business is the collection of debts (whether on behalf of himself or others); or (2) "a person" who "regularly" collects debts on behalf of others (whether or not it is the principal purpose of his business). "To state a claim for violation of the FDCPA, a plaintiff must allege that the defendant is a 'debt collector' collecting a 'debt.'" *Ines v. Countrywide Home Loans,* No. 08cv1267 WQH (NLS), 2008 WL 4791863, *2 (S.D.Cal. Nov. 3, 2008).

Plaintiffs allege that ETS has "violated provisions of ... the [FDCPA]." They do not allege that ETS is a debt collector, however, nor identify the provisions of the act that have purportedly been violated.[13] Because plaintiffs do not assert that ETS is a debt collector, they fail to state a claim under the FDCPA. Furthermore, because "foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA," *id.* (citing *Hulse v. Ocwen Fed. Bank, FSB,* 195 F.Supp.2d 1188, 1204 (D.Or.2002) (internal quotation marks omitted)), they do not plead that ETS was "collecting a debt." For both reasons, plaintiffs' FDCPA claim is deficient and ETS's motion to dismiss must be granted.

**D. Whether Plaintiffs' Complaint States a Claim Under the RFDCPA**

Like the FDCPA, the RFDCPA applies only to debt collectors. The definition of "debt collector" found in the state statute is broader than that contained in the FDCPA, however. The RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." See CAL. CIV. CODE § 1788.2(c).

Plaintiffs do not identify the sections of the RFDCPA that ETS has allegedly violated. They state merely that ETS has "violated provisions of the [RFDCPA] including but not limited to [California] Civil Code § 1788(e) and (f)."[14] The California Civil Code contains no such provisions. Moreover, as noted, plaintiffs do not allege that ETS is a debt collector or that it was in fact attempting to collect a debt. Because foreclosure does not constitute debt collection under the RFDCPA, it does not appear that plaintiff can cure this deficiency. See *Ines,* 2008 WL 4791863 at *3 ("The Court finds that the Complaint arises out of the allegedly unlawful foreclosure on Plaintiff's property pursuant to a deed of trust, which does not fall within the meaning of the RFDCPA or the FDCPA"). Thus, ETS's motion to dismiss this claim must also be granted.

**E. Whether Plaintiffs' Complaint States a Claim Under RESPA**

As with plaintiffs' other claims, the complaint does not identify the provisions of RESPA that ETS allegedly violated.[15] Plaintiffs may intend to allege a violation of 12 U.S.C. § 2605(e), which requires that a "loan servicer" respond to a "qualified written request from the borrower ... for information relating to the servicing of such loan." The statute defines a "loan servicer" as a person responsible for "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." 12 U.S.C. § 2605(i)(3). Plaintiffs do not allege that ETS is a loan servicer, however; rather, they allege that

---

**13.** *Id.,* ¶ 20.

**14.** *Id.*

**15.** *Id.*

it is a trustee. See *Lopez v. GMAC Mortg. Corp.*, No. C 07–3911 CW, 2007 WL 3232448, *3 (N.D.Cal. Nov. 1, 2007) ("Plaintiff has not alleged that ETS is a loan servicer. Plaintiff alleges that ETS is the trustee of the disputed loan, but has not alleged that ETS ever received or was responsible for receiving periodic payments on the loan. Furthermore, Plaintiff cites no authority to support his contention that a trustee can be sued under RESPA directly or as an agent of a loan servicer"). Moreover, neither ETS nor the court is required to guess as to the manner in which ETS's conduct allegedly violated RESPA. See *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (in deciding a motion to dismiss, the court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged"); *Levine v. Citibank*, No. 07CV2032 WQH (CAB), 2008 WL 220282, *3 (S.D.Cal. Jan. 24, 2008) ("Defendant attempts in its Motion to Dismiss to guess which provisions of the FCRA Plaintiff relies on in the Complaint. Defendant speculates that because it is a furnisher of credit information, Plaintiff is probably suing under 15 U.S.C. § 1681s–2, which regulates the responsibilities of credit furnishers. See 15 U.S.C. §§ 1681s–2(a) and (b). However, under Fed R. Civ. P. 8, Defendant need not guess which provision of law Plaintiff is suing under, but instead must be put on fair notice of such claim(s).… Because Plaintiff's vague allegations do not cite any provision of the FCRA which Defendant allegedly violated, and also do not allege any conduct by Defendant which allegedly violated the FCRA, they fail even the lib-eral pleading standard afforded to pro se plaintiffs.… The Court concludes that Plaintiff has neither stated, nor put Defendant on notice of, a FCRA claim").

## F. Whether Plaintiffs' Complaint States a Claim Under TILA, HOEPA, or the FTC Act

▮▮▮▮ Plaintiffs' cause of action for "predatory lending practices" asserts claims under TILA, HOEPA and the FTC Act.[16] Plaintiffs' allegations of wrongdoing in the claim are directly primarily at Mortgageit, a third party not named as a defendant. Plaintiffs allege that "[a]ssuming *arguendo* that Defendant Doe 1 does have the right … to initiate foreclosure, then Defendant, Doe 1 is subject to defenses that would have been available against Mortgageit, the initial Lender."[17] Plaintiffs assert that they are "informed and believe[ ] … that Mortgageit has engaged in deceptive practices with respect to Plaintiff[s] in violation of [HOEPA, TILA and the FTC Act], the specifics of which are unknown, but which are subject to discovery and with respect to which the specifics will be alleged by amendment to this complaint when ascertained."[18] Plaintiffs finally allege that "[o]ne or more of the predatory lending practices referred to in the previous paragraph permit, under the law, one or more defenses or remedies, the specifics of which will be alleged by amendment to this complaint when ascertained."[19] In sum, plaintiffs allege that Mortgageit committed unspecified acts violating unspecified provisions of federal law, and that the violations give rise to "defenses or remedies." They do not allege that any of ETS's actions violate TILA, HOEPA or the FTC Act. They merely assert that Mortgageit's actions provide "defens-

16. *Id.,* ¶¶ 21–24.

17. *Id.,* ¶ 22.

18. *Id.,* ¶ 23.

19. *Id.,* ¶ 24.

es" against Doe 1, and may provide "remedies" against foreclosure. These allegations are not sufficient to state a claim against ETS for violation of TILA, HOEPA or the FTC Act.[20] See *Levine,* 2008 WL 220282 at \*3 ("Because Plaintiff's vague allegations ... do not allege any conduct by Defendant which allegedly violated the FCRA, they fail even the liberal pleading standard afforded to pro se plaintiffs," citing *Balistreri,* 901 F.2d at 699).

## G. Whether Plaintiffs' Complaint States a Claim Under RICO

### 1. Substantive Elements of a RICO Claim

 To state a RICO claim, plaintiffs must allege that defendant (a) received income derived from a pattern of racketeering activity, and used the income to acquire or invest in an enterprise in interstate commerce; (b) acquired or maintained an interest in, or control of, an enterprise engaged in interstate commerce through a pattern of racketeering activity; (c) caused an enterprise engaged in interstate commerce, while employed by the enterprise, to conduct or participate in a pattern of racketeering activity; or (d) conspired to engage in any of these activities. 18 U.S.C. § 1962; see also *United States v. Turkette,* 452 U.S. 576, 582, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ("In order to [prevail] under RICO, [a party] must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.' The enterprise is an entity.... The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute"); *Forsyth v. Humana, Inc.,* 114 F.3d 1467,

1481 (9th Cir.1997) (plaintiff must allege "(1) the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity"). Racketeering activity is any act indictable under the provisions of 18 U.S.C. § 1961. *Forsyth,* 114 F.3d at 1481. A "pattern" requires the commission of at least two acts of "racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

 Plaintiff must also plead that defendants' violation was both the "but for" and proximate cause of a concrete financial injury. *Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1117 (9th Cir.1999); *Forsyth,* 114 F.3d at 1481 (citing *Imagineering, Inc. v. Kiewit Pacific Co.,* 976 F.2d 1303, 1311 (9th Cir.1992), cert. denied, 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993)).

### 2. Applicable Pleading Standards

 Although plaintiffs' complaint is not entirely clear, it appears that they intend to allege mail fraud.[21] Predicate acts of mail fraud and wire fraud must be alleged with particularity under Rule 9(b). *Lancaster Community Hospital v. Antelope Valley Hospital District,* 940 F.2d 397, 405 (9th Cir.1991), cert. denied, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992); *U.S. Concord, Inc. v. Harris Graphics Corp.,* 757 F.Supp. 1053, 1061 (N.D.Cal.1991) ("The Ninth Circuit has held that allegations of predicate acts un-

---

**20.** Further, the FTC Act does not provide a private right of action. *Fisher v. Coca–Cola Bottling Co. of Los Angeles,* No. CV 78 0479–F, 1979 WL 1597, \*2 (C.D.Cal. Mar. 12, 1979) ("There is no private right of action under the Federal Trade Commission Act. Initial remedial power lies with the Commission itself,"

citing *Carlson v. Coca–Cola Company,* 483 F.2d 279, 280 (9th Cir.1973)).

**21.** *Id.,* ¶ 13 ("[T]he Defendants and each of them have utilized the United States mail in furtherance of their conspiracy").

der RICO must comply with Rule 9(b)'s specificity requirements," citing *Schreiber Distributing Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400–01 (9th Cir.1986)).

■ Rule 9(b) requires that plaintiffs allege the time, place, and manner of each act of fraud, the nature of the fraudulent scheme, and the role of each defendant in the scheme. *Lancaster Community Hospital*, 940 F.2d at 405 (stating that a RICO plaintiff must allege the time, place and manner of each act of fraud, and the role of each defendant in the fraud); *Rothman v. Vedder Park Management*, 912 F.2d 315, 317 (9th Cir.1990) (holding that factual allegations showing the existence of a scheme to defraud are "essential elements of mail fraud," and that their absence from a complaint necessitates its dismissal); see also *Advocacy Organization for Patients and Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 322 (6th Cir.1999) (holding that a RICO plaintiff must allege, "at a minimum, the time, place and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud"); see generally *Gotham Print, Inc. v. American Speedy Printing Centers, Inc.*, 863 F.Supp. 447, 457 (E.D.Mich.1994) ("Courts have been particularly sensitive to Fed. R.Civ. Pro. 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme").

**3. Whether Plaintiffs' Complaint Alleges the Existence of an Enterprise**

As noted, 18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." See *Johnson v. JP Morgan Chase Bank*, CV 08–0081 LJO SMS, 2008 WL 1925026, *4 (E.D.Cal. Apr. 29, 2008) (" 'The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct,' " quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). "An enterprise 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.' " *Id.* (quoting *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524). " 'The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages.' " *Id.* (quoting *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524).

■ An "associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir.2007) (en banc).[22] It " 'is a group of persons associated together for a common purpose of engaging in a course of conduct.' " *Id.* at 552 (quoting *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524). "To establish the existence of such an enterprise, a plaintiff must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a continuing unit.' "

---

22. In *Odom,* the Ninth Circuit specifically overruled its prior requirement the alleged associate-in-fact enterprise must have a sufficiently "ascertainable structure, separate and apart from the structure inherent in the conduct of the pattern of racketeering activity." See *Chang v. Chen,* 80 F.3d 1293, 1295 (9th Cir.1996).

*Id.* (citing *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524). " '[I]t is essential to plead precisely in a RICO case the enterprise alleged and the RICO section allegedly violated.' " *Johnson,* 2008 WL 1925026 at *4 (quoting *Reynolds v. East Dyer Development Co.,* 882 F.2d 1249, 1251 (7th Cir. 1989)).

■ Plaintiffs allege that defendants "in so acting in this case and with respect to many other mortgage or trust deed security instruments engage in a pattern and practice of utilizing the non-judicial foreclosure procedures of this [s]tate to foreclose on properties when they do not, in fact, have the right to do so." [23] They also allege that defendants "have utilized the United States mail in furtherance of their conspiracy to ... unlawfully collect on negotiable instruments when they [are] not entitled ... to do so." [24] These allegations sufficiently plead that defendants had a common purpose—i.e., to collect and foreclose on mortgages illegally. They do not, however, adequately plead the existence of an "ongoing organization ... [that] function[s] as a continuing unit." *Odom,* 486 F.3d at 551 (citing *Turkette,* 452 U.S. at 583, 101 S.Ct. 2524). Plaintiff identify one defendant, ETS, that is allegedly attempting to foreclose on their property at the direction of Doe 1. They do not identify any other attempted foreclosure or loan collection activities, however, nor describe a continuing relationship between ETS and other defendants. They similarly do not allege the existence of an ongoing organization—formal or informal—among the defendants. Finally, plaintiffs' complaint fails to specify which section of RICO defendants' actions allegedly violated. See *Johnson,* 2008 WL 1925026 at *4 (" '[I]t is essential to plead precisely in a RICO case the enterprise alleged and the

RICO section allegedly violated,' " quoting *Reynolds,* 882 F.2d at 1251). Consequently, plaintiffs have not properly pled the enterprise element of a RICO claim.

### 4. Whether Plaintiffs' Complaint Alleges Predicate Acts

■ Plaintiffs' RICO claim incorporates the preceding allegations in the complaint.[25] The only additional allegation supporting the claim is a conclusory statement that "[i]n doing the aforesaid acts, Defendants and each of them were participating in and have participated in a scheme of racketeering as that term is defined in RICO." [26] This does not suffice to plead a pattern of racketeering activity. Plaintiffs do not adequately identify the predicate acts that form the basis of the alleged "scheme of racketeering." See *Graf v. Peoples,* No. CV 07–4731–VAP (E), 2008 WL 4189657, *6 (C.D.Cal. Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the Complaint's initial lengthy description of many different asserted acts of wrongdoing by various Defendants. Plaintiff does not expressly identify any RICO predicate acts, but simply incorporates his previous allegations. Such 'shotgun' pleading is insufficient to plead a RICO claim," citing *Savage v. Council on American–Islamic Relations, Inc.,* No. C 07–6076 SI, 2008 WL 2951281, *14 (N.D.Cal. July 25, 2008) (finding that a RICO claim was insufficient where plaintiff set forth a "redundant narrative of allegations and conclusions of law, but [made] no attempt to allege what facts are material to his claims under the RICO statute, or what facts are used to support what claims under particular subsections of RICO") and *Federal Reserve Bank of San Francisco v. HK Systems,* No. C–95–1190 MHP, 1997

---

**23.** *Id.,* ¶ 9.

**24.** *Id.,* ¶ 13.

**25.** *Id.,* ¶ 25.

**26.** *Id.,* ¶ 26.

WL 227955, *3 (N.D.Cal. Apr. 24, 1997) (finding that a complaint was insufficient for failure to "identify exactly which acts are 'predicate acts' for RICO liability")).

Further, although, the court need not guess which activities allegedly constitute predicate acts, it appear that plaintiffs intend to plead mail fraud as a predicate. As noted, allegations of mail fraud claims are subject to Rule 9(b)'s requirement that plaintiffs allege the time, place, and manner of each act of fraud, the nature of the fraudulent scheme, and the role of each defendant in the scheme. *Lancaster Community Hospital*, 940 F.2d at 405. Plaintiffs' complaint, which includes no allegations regarding the time, place or specific content of any alleged misrepresentations, does not meet this standard. To the extent the complaint contains any description of the allegedly fraudulent scheme and defendants' roles in it, the allegations are vague and do not precisely define the role of each defendant in the fraud. Finally, plaintiffs do not identify the manner in which the alleged scheme involved use of the U.S. mail.

### 5. Whether Plaintiffs' Complaint Alleges a Concrete Financial Injury

Plaintiffs must, as noted, also plead a concrete financial loss. See *Forsyth*, 114 F.3d at 1481. Plaintiffs allege that they have "been damaged in having to hire attorneys before bringing this action and [in] bring[ing] this action ... and will have to incur attorneys['] fees to stop the wrongful acts" of defendants.[27] Plaintiff also allege that, due to defendants' actions, their property may be subject to improper foreclosure in the future, and they may have to pay greater amounts than are in fact owed on their mortgage.[28] Neither of

these allegations suffices to establish a concrete financial injury.[29]

 As respects plaintiffs' claims regarding legal fees, the cost of filing a RICO action does not satisfy the concrete financial injury requirement. See *Walter v. Palisades Collection, LLC*, 480 F.Supp.2d 797, 805 (E.D.Pa.2007) ("Plaintiffs allege that they were forced to expend money on attorneys' fees to file the case sub judice. Clearly, any actions taken by Mr. Walter or his counsel to initiate or litigate the case sub judice cannot form the basis for RICO liability. It would be illogical to allow a plaintiff to have RICO standing based on damages incurred by the plaintiff in paying his attorney to file the RICO action. RICO's injury requirement would be a nullity if paying an attorney to initiate the RICO action itself sufficed as a damage").

 Plaintiffs' remaining allegations involve prospective injuries—i.e., the possibility that they may, in the future, lose their property, have to pay more money than is owed on their mortgage, or incur additional attorneys' fees. Prospective injuries likewise do not satisfy RICO's concrete financial injury requirement. See *Walter*, 480 F.Supp.2d at 804–05 ("Plaintiffs allege that they will be forced to expend money on attorneys' fees in the future to defend the state court lawsuits. These prospective damages are not actionable. RICO liability cannot attach to future contingent damages"); *Frankel v. Cole*, No. 06–CV–439 (CBA)(RER), 2007 WL 5091074, *14 (E.D.N.Y. Apr. 20, 2007) ("[T]he alleged injury of lost business opportunities is too speculative to constitute a RICO injury. Courts have held lost business opportunities or commissions to be compensable where a plaintiff alleged

---

27. *Id.,* ¶ 15.

28. *Id.,* ¶¶ 12–13.

29. Plaintiffs also allege that they have been "damaged in other ways that are not readily apparent at this time." (*Id.,* ¶ 15.) This is not a concrete financial loss.

that a business opportunity had already been lost as a result of the defendant's racketeering activity. Here, the alleged injury, if any, was prospective at the time the RICO predicate acts were committed" (citations omitted)). For this reason as well, therefore, plaintiffs' pleading of a RICO claim is deficient.

## III. CONCLUSION

For the reasons stated, the court grants ETS's motion to dismiss. In the event that plaintiffs can allege facts that would support a claim or claims against ETS without violating Rule 11 of the Federal Rules of Civil Procedure,[30] the court grants them twenty days leave to amend the complaint. See *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995) (" '[A] district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts,' " quoting *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.,* 911 F.2d 242, 247 (9th Cir.1990)).

---

**30.** Under Rule 11(b), an attorney or party signing a pleading represents that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED.R.CIV.PROC. 11(b)(3). Sanctions can be imposed if Rule 11(b) is violated. See FED. R.CIV.PROC. 11(c).