Partial Dissent and Partial Concurrence by Judge KORMAN
OPINION
KOZINSKI, Circuit Judge:
. The principal question in this appeal is whether the trustee of a California deed of trust is a “debt collector” under the Fair Debt Collection Practices Act (FDCPA).
FACTS
Vien-Phuong Thi Ho bought a house in Long Beach using funds she borrowed from Countrywide Bank. The loan was secured by a deed of trust. A deed of trust involves three parties. See Yvanova v. New Century Mortg. Corp., 62 Cal.4th 919, 926-27, 199 Cal.Rptr.3d 66, 365 P.3d 845 (Cal. 2016) (explaining California deeds of trust). The first party is the lender, who is the trust beneficiary. The second party is the *620 borrower-trustor,.who holds equitable title to the property. The third party is the trustee, an agent for both the lender and the borrower who is authorized to sell the property if the debtor defaults. Id. at 927, 199 Cal.Rptr.3d 66, 365 P.3d 845. In this case, the lender was Countrywide, the borrower was Ho and the trustee was Recon-Trust.
After Ho began missing loan payments, ReconTrust initiated a non-judicial foreclosure. See id. at 926-27, 199 Cal.Rptr.3d 66, 365 P.3d 845 (detailing California’s complex statutory procedure governing nonjudicial foreclosures). As the first step in this process, ReconTrust recorded a notice of default and mailed this notice to Ho. See Cal. Civ. Code § 2924(a)(1). The notice advised Ho that she owed more than $20,000 on her loan and that she “may have the legal right to bring [her] account in good standing by paying all of [her] past due payments” to Countrywide. The notice also advised Ho that her home “may be sold without any court action.” Ho did not pay up. ReconTrust then took the second step in the process by recording and mailing a notice of sale. See Cal. Civ. Code §§ 2924(a)(3). This notice advised Ho that her home would be auctioned “unless [she took] action to protect [her] property.” Following the trustee’s sale, ReconTrust would deliver the deed to the purchaser and the proceeds of the sale to Countrywide. See 5 Harry D. Miller & Marvin B. Starr, Cal. Real Est. § 13:1 (4th ed. 2015). Ho would then lose both possession of the house and her right of redemption. Id. §§ 13:266,13:267.[1]
Ho filed this lawsuit alleging that Recon-Trust violated the FDCPA by sending her notices that misrepresented the amount of debt she owed. See 15 U.S.C. § 1692e(2)(A). Ho also sought to rescind her mortgage transaction under the Truth in Lending Act (TILA) on the ground that the defendants had perpetrated fraud against her. See 15 U.S.C. § 1635(a). The district court twice dismissed Ho’s rescission claim without prejudice, and Ho did not replead it. The district court then granted ReconTrust’s motion to dismiss Ho’s FDCPA claims.[2]
Ho appeals, arguing that ReconTrust is a “debt collector” because the notice of default and the notice of sale constitute attempts to collect debt. Because both notices threatened foreclosure unless Ho brought her account current, she reasonably viewed those documents as an inducement to pay up. Ho also argues that her TILA rescission claim should be reinstated on appeal because our circuit clarified the requirements for such a claim between the district court’s dismissal and this appeal. See Merritt v. Countrywide Fin. Corp., 759 F.3d 1023, 1032-33 (9th Cir. 2014).
DISCUSSION
I
The FDCPA subjects “debt collectors” to civil damages for engaging in certain abusive practices while attempting to collect debts. See §§ 1692d-f, 1692k. The statute’s general definition of “debt collec *621 tor” captures any entity that “regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another.” § 1692a(6). Debt is defined as an “obligation ... of a consumer to pay money.” § 1692a(5).
The FDCPA imposes liability only when an entity is attempting to collect debt. 15 U.S.C. § 1692(e). For the purposes of the FDCPA, the word “debt” is synonymous with “money.” 15 U.S.C. § 1692a(5). Thus, ReconTrust would only be liable if it attempted to collect money from Ho. And this it did not do, directly or otherwise. The object of a nonjudicial foreclosure is to retake and resell the security, not to collect money from the borrower. California law does not allow for a deficiency judgment following non-judicial foreclosure. This means that the foreclosure extinguishes the entire debt even if it results in a recovery of less than the amount of the debt. Cal. Civ. Code § 580d(a); see Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1239 (10th Cir. 2013) (“[A] non-judicial foreclosure does not result in a mortgagor’s obligation to pay money—it merely results in the sale of property subject to a deed of trust.”); Alaska Tr., LLC v. Ambridge, 372 P.3d 207, 228 (Alaska 2016) (Winfree, J., dissenting) (noting that non-judicial foreclosure “does not in and of itself collect a debt, but rather calls for the vesting and divesting of title to real property according to the parties’ prior agreement” (internal quotation marks omitted)). Thus, actions taken to facilitate a non-judicial foreclosure, such as sending the notice of default and notice of sale, are not attempts to collect “debt” as that term is defined by the FDCPA.
The prospect of having property repossessed may, of course, be an inducement to pay off a debt. But that inducement exists by virtue of the lien, regardless of whether foreclosure proceedings actually commence. The fear of having your car impounded may induce you to pay off a stack of accumulated parking tickets, but that doesn’t make the guy with the tow truck a debt collector.
Our holding today affirms the leading case of Hulse v. Ocwen Federal Bank, 195 F.Supp.2d 1188, 1204 (D. Or. 2002), which held that “foreclosing on a trust deed is an entirely different path” than “collecting funds from a debtor.”[3] We acknowledge that two circuits have declined to follow Hulse. Glazer v. Chase Home Fin. LLC, 704 F.3d 453, 461 (6th Cir. 2013); Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 378-79 (4th Cir. 2006). But we find neither case persuasive. The Fourth Circuit in Wilson was more concerned with avoiding what it viewed as a “loophole in the Act” than with following the Act’s text. 443 F.3d at 376. We rely on policy to help interpret statutory language; we don’t make it ourselves. The Sixth Circuit’s decision in Glazer rests entirely on the premise that “the ultimate purpose of foreclosure is the payment of money.” 704 F.3d at 463. But the FDCPA defines debt as an “obligation of a consumer to pay money.” *622 15 U.S.C. § 1692a(5) (emphasis added). Following a trustee’s sale, the trustee collects money from the home’s purchaser, not from the original borrower. Because the money collected from a trustee’s sale is not money owed by a consumer, it isn’t “debt” as defined by the FDCPA,
The most plausible reading of the statute is that the foreclosure notices were “the enforcement of [a] security interest! ]” as contemplated by section 1692f(6) rather than “debt collection” as contemplated by section 1692a. The FDCPA’s general definition of “debt collector,” contained at section 1692a(6), applies to entities that “regularly collect! ] or attempt! ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another.” Entities that qualify as debt collectors- under this general definition are debt collectors for purposes of the entire statute. However, the FDCPA also includes a narrower definition of “debt collector.” This narrower definition of the term “also includes” entities whose principal business purpose is “the enforcement of security interests.” 15 U.S.C. § 1692a(6). This provision would be superfluous if ail entities that enforce security interests were already included in the definition of debt collector for purposes of the entire FDCPA. But the relationship between sections 1692a(6) and 1692f(6) makes sense if some security enforcers are debt collectors only for the limited purposes of section 1692f(6). All parties agree that ReconTrust is a debt collector under the narrow definition. Ordinarily, section 1692f(6) would protect a consumer against the abusive practices of a security enforcer who does not fit the broader definition of a debt collector. But that doesn’t matter in our case because ReconTrust is not accused of conduct prohibited by section 1692f(6). The sole question here is whether ReconTrust is a debt collector under the general definition—that is, whether Recon-Trust “regularly collects” debts.
We do not hold that the FDCPA intended to exclude all entities whose principal purpose is to enforce security interests. If entities that enforce security interests engage in activities that constitute debt collection, they are debt collectors. We hold only that the enforcement of security interests is not always debt collection. We agree with the dissent that the terms are not mutually exclusive. But they also aren’t coextensive.[4]
We therefore agree with a central premise of Wilson and Glazer. An entity does not become a general “debt collector” if its “only role in the debt collection process is the enforcement of a security interest.” Wilson, 443 F.3d at 378; see Glazer, 704 F.3d at 464. But from there our paths diverge. We view all of ReconTrust’s activities as falling under the umbrella-of “enforcement of a security interest.” Under California’s non-judicial foreclosure statutes, ReconTrust could not conduct the trustee’s sale until' it sent the notice of default and the notice of sale. If Recon-Trust can administer a trustee’s sale without collecting a debt, it must be able to maintain that status when it takes the statutorily required steps to conduct the trustee’s sale. The right to “enforce”- the security interest necessarily implies the light to send the required notices; to hold otherwise would divorce the notices from their context.[5]
*623 The Glazer court rejected this view, noting that it couldn’t think of anyone other than repossessors “whose only role in the collection process is the enforcement of security interests,” 704 F.3d at 464. Glazer explained that a “lawyer principally engaged in mortgage foreclosure does not meet this criteria [sic], for he must communicate with the debtor regarding the debt during the foreclosure proceedings,” but this is “not so for repos-sessors, who typically ‘enforce’ a security interest—i.e., repossess or disable property—when the debtor is not present, in order to keep the peace.” 704 F.3d at 464. We find this distinction unpersuasive. The FDCPA itself recognizes that reposses-sors will, communicate with debtors.[6] Enforcement of a security interest will often involve communications between the fore-closer and the consumer. When these communications are limited to the foreclosure process, they do not transform foreclosure into debt collection.
The notices at issue in our case didn’t request payment from Ho.[7] They merely informed Ho that the foreclosure process had begun, explained the foreclosure time-line, apprised her of her rights and stated that she could contact Countrywide (not ReconTrust) if she wished to make a payment.. These notices were designed to 'protect the debtor. They are entirely different from the harassing communications that the FDCPA was meant to stamp out. Thus, we agree with the California Courts of Appeal that “giving notice of a foreclosure sale to a consumer as required by the [California] Civil Code does not constitute debt collection activity under the FDCPA.” Pfeifer v. Countrywide Home Loans, Inc., 211 Cal.App.4th 1250, 150 Cal.Rptr.3d 673, 684 (2012); see Fonteno v. Wells Fargo Bank, N.A., 228 Cal.App.4th 1358,176 Cal.Rptr.3d 676, 690-92 (2014).[8]
Even though the notices didn’t explicitly request payment, Ho contends that they still qualify as debt collection because they *624 pressured her to send money to Countrywide. See Burnett, 706 F.3d at 1239. But, as we’ve explained, the enforcement of a security interest often creates an incentive to pay the underlying debt. If this were sufficient to transform the enforcement of security interests into debt collection, then all security enforcers would be debt collectors. This would render meaningless the FDCPA’s carefully drawn distinction between debt collectors and enforcers of security interests, and expand the scope of the FDCPA well past the boundary of clear congressional intent and common sense.
An additional consideration weighs in favor of ReconTrust: Holding trustees liable under the FDCPA would subject them to obligations that would frustrate their ability to comply with the California statutes governing non-judicial foreclosure. ReconTrust lists a half dozen conflicts between the FDCPA and California law. For example, the FDCPA prohibits debt collectors from communicating with third parties about the debt absent consent from the debtor. 15 U.S.C. § 1692c(b). But California law requires the trustee to announce all trustee’s sales in a newspaper and mail the notice of default to various third parties. See Cal. Civ. Code §§ 2924b(c)(l)-(2), 2924f(b). Moreover, the FDCPA prohibits debt collectors from directly communicating with debtors if the debt collector knows that the debtor is represented by counsel. 15 U.S.C. § 1692c(a)(2). California law requires the trustee to mail the notices of default and sale directly to the borrower, and makes no exception for borrowers who are represented by counsel. Cal. Civ. Code. §§ 2924b(b)(l), 2924f(c)(3). In both of these cases, a trustee could not comply with California law without violating the FDCPA.
Things would become even more complicated if the consumer elected to dispute the debt pursuant to the FDCPA. In such a case, a trustee would be required to “cease collection of the debt” until he obtained verification of that debt. 15 U.S.C. § 1692g(b). California law compels trustees to mail a copy of the notice of default within ten business days after recording it. Cal. Civ. Code § 2924b(b)(l). If the consumer disputes his debt as soon as it is recorded, the trustee would have to seek verification of the debt, and would be unable to mail the notice until the debt was verified. In the likely event that such verification took longer than ten days, the trustee would miss California’s statutory deadline for mailing out the notice. And if verification requests or other hassles resulted in a delay of a year or longer, the trustee would be required to restart the foreclosure process. See § 2924g(c)(2).
ReconTrust’s amici suggest that holding trustees liable as debt collectors would “literally prevent [California’s foreclosure] system from functioning.” Brief for United Trustee’s Ass’n et al. as Amici Curiae Supporting Defendants-Appellees, Ho v. ReconTrust No. 10-56884, 2015 WL 1020492, at *4. In an amicus brief filed in support of Ho, the Consumer Financial Protection Bureau conceded that “a conflict may exist between state and federal law.” Brief for Consumer Financial Protection Bureau as Amicus Curiae Supporting Plaintiff-Appellant, Ho v. ReconTrust No. 10-56884, 2015 WL 4735787, at *14.[9] There can be no *625 doubt that labeling ReconTrust a debt collector under the broader definition of the FDCPA would create sustained friction between the federal statute and the state scheme.
Earlier this year, the Supreme Court instructed us that the FDCPA should not be interpreted to interfere with state law unless Congress clearly intended to displace that law. Sheriff v. Gillie, — U.S. -, 136 S.Ct. 1594, 1602, 194 L.Ed.2d 625 (2016). Sheriff involved an Ohio statute that authorized the state Attorney General to retain independent contractors to collect debts owed to the state. The Attorney General authorized these independent contractors to send debt collection notices on his letterhead. Id. at 1599. Several recipients of these notices sued the contractors for violating the FDCPA, claiming that their use of the Attorney General’s letterhead was misleading. See 15 U.S.C. § 1692e. The Supreme Court held that the notices were not deceptive and therefore ruled in favor of the independent contractors. In reaching that conclusion, the Court “note[d] a federalism concern.” Sheriff, 136 S.Ct. at 1602. Because Ohio’s attempt to collect on its debts is “a core sovereign function,” the Court was loath to interpret the FDCPA to interfere with the debt collection methods Ohio had chosen to adopt. Id. It held that there was no cause “to construe federal law in a manner that interferes with. ‘States’ arrangements for conducting their own governments.’” Id. (quoting Nixon v. Missouri Mun. League, 541 U.S. 125, 140, 124 S.Ct. 1555, 158 L.Ed.2d 291 (2004)).
Sheriffs efforts to protect Ohio law from federal encroachment reflect the Supreme Court’s strong fidelity to the “federalism canon.” See Gregory v. Ashcroft, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). According to the Court, “federal legislation threatening to trench on the- States’ arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State’s chosen disposition of its own power, in the absence of the plain statement Gregory requires.” Nixon, 541 U.S. at 140, 124 S.Ct. 1555. This presumption applies with particular force when Congress legislates “in a field which the States have traditionally occupied.” Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947); see Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). That admonition is especially relevant to our case, as there is little doubt that foreclosure is a traditional area of state concern. See BFP v. Resolution Trust Corp., 511 U.S. 531, 544, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (characterizing the regulation of foreclosures as “an essential state interest”); Rank v. Nimmo, 677 F.2d 692, 697 (9th Cir. 1982) (noting that “mortgage foreclosure has traditionally been a matter for state courts and state law”). It follows that “the presumption against preemption remains in effect where [a federal statute] is alleged to preempt state foreclosure laws.” Higley v. Flagstar Bank, 910 F.Supp.2d 1249, 1257 n.7 (D. Or. 2012).
We find no comfort in the dissent’s suggestion that the conflicts between California law and the FDCPA can be mitigated by consent between the parties to a mortgage deal. Dissent at 636-38. The fact that parties may be able.to draft their way around conflicts renders them conflicts no less. Relegating future parties to the uncertain process of adding contractual *626 terms may itself upset a state’s carefully drawn scheme of notice and disclosure; additional efforts or more complex terms are themselves costs of that conflict. The point of the federalism canon isn’t to resolve ambiguities so that we can, with a little more effort, enjoy a brackish mix of state and federal law. The point is to keep the federal government from creating any conflict with traditional state lawmaking absent clear congressional intent.
When one interpretation of an ambiguous federal statute would create a conflict with state foreclosure law and another plausible interpretation would not, we must adopt the latter interpretation.[10] The statutory phrase “debt collector” is notoriously ambiguous, causing our sister circuits to divide as to whether foreclosure-related activities constitute debt collection.[11] Even courts holding that foreclosure is debt collection have recognized that the term “debt collector” is cryptic. E.g., Glazer, 704 F.3d at 460; Ambridge, 372 P.3d at 222 (observing that “the FDCPA could certainly be clearer on the question”). Given this ambiguity, we decline to “construe federal law in a manner that interferes with [California’s] arrangements for conducting” non-judicial foreclosures. Sheriff, 136 S.Ct. at 1602 (internal quotation marks omitted).
II
The district court twice dismissed Ho’s TILA rescission claim without prejudice, and Ho didn’t replead it in her third complaint. We have held that claims dismissed without prejudice and not repleaded are not preserved for appeal; they are instead considered “voluntarily dismissed.” See Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012). Here, however, the district court didn’t give Ho a free choice in whether to keep repleading the TILA rescission claim. Rather, the court said that if. Ho wished to replead the claim she “would be required to allege that she is prepared and able to pay back the amount of her. purchase price less any down-payment she contributed and any payments made since the time of her purchase.” The judge concluded that if Ho “is not able to make that allegation in good faith, she should not continue to maintain a TILA rescission claim.” It’s unclear whether the judge meant this as benevolent advice or a stern command. But a reasonable litigant, particularly one proceeding pro se, could have construed this as a strict condition, one that might have precipitated the judge’s ire or even invited a sanction if disobeyed. Ho could not or would not commit to pay back the loan, and dropped the claim in her third complaint.
The district court based its condition on Yamamoto v. Bank of N.Y., which gave courts equitable discretion to “impose conditions on rescission that assure that the borrower meets her obligations once the *627 creditor has performed its obligations.” 329 F.3d 1167, 1173 (9th Cir. 2003). But, after the district court dismissed Ho’s claims, we held that a mortgagor need not allege the ability to repay the loan in order to state a rescission claim under TILA that can survive a motion to dismiss. Merritt v. Countrywide Fin. Corp., 759 F.3d 1023, 1032-33 (9th Cir. 2014). Ho argues that her rescission claims were properly preserved for appeal and should be reinstated.
Where, as here, the district court dismisses a claim and instructs the plaintiff not to refile the claim unless he includes certain additional allegations that the plaintiff is unable or unwilling to make, the dismissed claim is preserved for appeal even if not repleaded. A plaintiff is the master of his claim and shouldn’t have to choose between defying the district court and making allegations that he is unable or unwilling to bring into court.
This rule is a natural extension of our holding in Lacey. The Lacey rule—which displaced our circuit’s longstanding. and notably harsh rule that all claims not re-pleaded in an amended complaint were considered waived—was motivated by two principal concerns: judicial economy and fairness to the parties. 693 F.3d at 925-28. Those concerns apply here. We see no point in forcing a plaintiff into a drawn-out contest of wills with the district court when; for whatever reason, the plaintiff chooses not to comply with a court-imposed condition for repleading. We remand to the district court for consideration of Ho’s TILA rescission claim in light of Merritt v. Countrywide Fin. Corp., 759 F.3d at 1032-33.
AFFIRMED in part, VACATED and REMANDED in part. No costs.

. It’s not clear from the record whether a trustee's sale ever occurred. The notice of sale advised Ho that her home would be sold on a certain date. However, Ho's loan servicer approved a modification of the loan a few days prior to that date. The parties say nothing further about the trustee’s sale. For our purposes, it doesn’t matter whether the sale took place. Sale of the house would not render the case moot because Ho is seeking damages.

. The district court also dismissed Ho’s other claims under the FDCPA, the Racketeer Influenced and Corrupt Organizations Act and the Real Estate Settlement Procedures Act. We affirm these dismissals in a memorandum disposition filed concurrently herewith.

. The dissent’s effort to discount Hulse, dissent at 628, doesn't change the fact that Hulse is indeed the leading case for what other courts have recognized as the majority position. See, e.g., Aurora Loan Servs., LLC v. Kmiecik, 372 Ill.Dec. 586, 992 N.E.2d 125, 134 (Ill. App. Ct. 2013) ("The minority view taken is that the act of foreclosing on a mortgage is the collection of a debt according to the FDCPA.”). District courts across our circuit have approved of Hulse time and again. See, e.g., Castro v. Exec. Tr. Servs., LLC, No. CV-08-2156-PHX LOA, 2009 WL 438683, at *6 (D. Ariz. Feb. 23, 2009); Izenberg v. ETS Servs., LLC, 589 F.Supp.2d 1193, 1199 (C.D. Cal. 2008); Ines v. Countrywide Home Loans, Inc., No. 08cv1267WQH, 2008 WL 4791863, at *2 (S.D. Cal. Nov. 3, 2008).

. The dissent’s extensive reliance on the FDCPA's judicial venue clause, dissent at 633-35, fails for the same reason. The clause indeed contemplates that a security enforcer can be a debt collector, but it offers no indication that an entity is a debt collector because it enforces a security interest.

.Section 1692a(6) provides that enforcers of security instruments are debt collectors only for the limited puiposes of section 1692f. Section 1692f(6) prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property” (emphasis added). By referring to “threats” and not just actions, the statute contemplates that repossessors will communicate with debtors. The fact that Congress went out of its way to expose enforcers of security interests to liability for “threatening” debtors shows that such enforcers were expected to do more than merely repossess property in the middle of the night.

. The. dissent makes-much of the fact that the notice of trustee’s sale included a disclaimer stating that ReconTrust “is a debt collector attempting to collect a debt.” This disclaimer isn't sufficient to show that ReconTrust is a debt collector. See Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 932 (9th Cir. 2007) (per curiam); see also Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 386 n.3 (7th Cir. 2010) (similar), “Debt collector” isn’t an elective category. It's determined objectively, based on the activities of the entity in question.

. We find it significant that California expressly exempts trustees of deeds of trust from liability under the Rosenthal Act, the state analogue of the FDCPA. See Cal. Civ. Code. § 2924(b). The California legislature clearly views such trustees as materially different from debt collectors.

. At our invitation, the agency filed an amicus brief arguing that all trustees of deeds of trust are debt collectors under section 1692a(6). The agency has not exercised its authority to promulgate a rule interpreting the term "debt collector.” Thus, we accord deference to the agency’s interpretation of that phrase only to the extent that we find that interpretation persuasive. See United States v. Mead Corp., 533 U.S. 218, 226-29, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) (citing Skidmore v. Swift & Co., 323 U.S. 134, 139-40, 65 S.Ct. 161, 89 *625 L.Ed. 124 (1944)). We are unpersuaded by the agency’s reading of the statute and therefore do not defer to it.

. See Sheriff, 136 S.Ct. at 1602; Brief for Michigan and 11 Other States as Amici Curiae Supporting Petitioners at 4-17, Sheriff v. Gillie, — U.S. -, 136 S.Ct. 1594, 194 L.Ed.2d 625 (2016) (arguing that the federalism canon should be employed when interpreting ambiguous language in the FDCPA).

. Compare Glazer, 704 F.3d at 461 (holding that all "mortgage foreclosure is debt collection” for the purposes of the FDCPA); Wilson, 443 F.3d at 378-79 (similar); and Piper v. Portnoff Law Assocs., Ltd., 396 F.3d at 235-36 (3d Cir. 2005) (similar), with Burnett, 706 F.3d at 1239 (suggesting that non-judicial foreclosure is not debt collection for purposes of the FDCPA, but refusing to so hold); Warren v. Countrywide Home Loans, Inc., 342 Fed.Appx. 458, 461 (11th Cir. 2009) (holding that "foreclosing on a home is not debt collection for purposes” of the FDCPA); and Brown v. Morris, 243 Fed.Appx. 31, 35 (5th Cir. 2007) (holding that- "foreclosure is not per se FDCPA debt collection”).