# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700

---

| | |
|---|---|
| Appellate Court Caption | AURORA LOAN SERVICES, LLC, Plaintiff-Appellee, v. JOZEF KMIECIK, Defendant-Appellant, (Elzbieta Kmiecik and Unknown Owners and Nonrecord Claimants, Defendants.) |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1700 |
| Filed | June 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a mortgage foreclosure proceeding, defendant waived his objection to the denial of his motion to quash service of process by filing his verified answer, and his contention that plaintiff was a collection agency that failed to register under the Collection Agency Act before filing suit was rejected on the ground that plaintiff was a subsidiary of a bank and was exempt from the requirements of the Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-01068; the Hon. Robert E. Senechalle, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Stephen Richek, of Chicago, for appellant.

Harry N. Arger and Brett J. Natarelli, both of Dykema Gossett PLLC, of Chicago, for appellee.

Panel

PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.

Justices Howse and Palmer concurred in the judgment and opinion.


**OPINION**

¶ 1    Plaintiff, Aurora Loan Services, LLC (Aurora), filed a mortgage foreclosure complaint against Jozef Kmiecik (defendant) and Elzbieta Kmiecik[1] in January 2010. Defendant filed an answer to Aurora's complaint which was untimely and, in October 2010, the trial court entered an order of default and judgment of foreclosure against defendant. After the court entered an order approving the sale and distribution of the property at issue, defendant filed a combined motion to quash and motion to vacate all orders pursuant to section 2-1301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301 (West 2010)). The trial court denied both motions. On appeal, defendant contends that: (1) the trial court erred in denying the motion to quash because the affidavit of the special process server showed the individual served was between the ages of 26 and 30 years while defendant is 61 years old; and (2) the trial court's judgments are void because Aurora did not register as a collection agency with the state as required by the Collection Agency Act (Act) (225 ILCS 425/1 *et seq.* (West 2010)). We affirm.

¶ 2    On January 8, 2010, Aurora filed its complaint to foreclose mortgage against defendant and Elzbieta Kmiecik, pursuant to the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2010)). The complaint alleged as follows: on March 21, 2007, defendant and Elzbieta, as mortgagors, executed a mortgage in the amount of $303,000 to Mortgage Electronic Registration Systems, Inc. (MERS), "as nominee for HLB Mortgage," for the property commonly known as 7537 Mansfield Avenue in Burbank, Illinois (Property). Aurora claimed it was the agent for the holder of the mortgage and note and that defendant and Elzbieta were in default for not making the monthly payments beginning in September 2009 through the present. Aurora requested that a judgment of foreclosure and sale be entered against defendant and Elzbieta.

¶ 3    Copies of the mortgage and note were attached to the complaint. The mortgage defined

---

[1]Although the foreclosure complaint was filed against both Jozef and Elzbieta, Jozef is the only named party in the notice of appeal.

defendant and Elzbieta, "husband and wife as joint tenants," as the borrowers, HLB Mortgage as the lender, and MERS as the mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns." Section 20 of the mortgage provided that the "Note or partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." Each page of the mortgage was initialed by defendant and Elzbieta, and the mortgage and note were both signed by defendant and Elzbieta. The mortgage was notarized on March 21, 2007.

¶ 4      According to the affidavit of a special process server, defendant was served with a summons and a copy of the complaint on January 12, 2010, and the approximate age of the individual with whom a copy of the process was left was 26 to 30 years old.

¶ 5      On July 23, 2010, Aurora filed its first motion for default. The July motion stated that defendant had been personally served on January 12, 2010, and that a period of 60 days had expired since the date of service with no motion or answer on file. The motion was set for a hearing on August 19, 2010, in courtroom 2801 of the Daley Center at 8:45 a.m.

¶ 6      On August 13, 2010, Aurora filed a second motion requesting an order of default against defendant and Elzbieta, along with a motion for a judgment of foreclosure and sale, and a motion to appoint a selling officer.

¶ 7      On August 19, 2010, when the motion for default was set to be heard, defendant appeared before the trial court in courtroom 2801 and stated that he was trying to modify the loan. The court entered a written order allowing defendant an extension of time to answer Aurora's complaint until September 16, 2010, and set a hearing on Aurora's motion for default for September 22, 2010 in courtroom 2801 at 8:45 a.m. In the order, the court also stated that if defendant did not "file an answer by [September 16, 2010], present a valid defense, or settle the case with the lender before the hearing date, it is very likely that the court will enter an order of foreclosure and sale on the hearing date."

¶ 8      On September 22, 2010, defendant again appeared in courtroom 2801 before the same trial judge who granted the previous continuance. The court granted defendant another continuance and gave him an additional 14 days to answer or otherwise plead. The answer was then due on October 6, 2010. The case, however, was continued for further status until October 13, 2010, in courtroom 2801 at 8:45 a.m., and the motion for default and judgment was continued generally to October 13.

¶ 9      On October 13, 2010, at the 8:45 a.m. status hearing in courtroom 2801, the same judge who had presided over the two previous court hearings entered a default judgment against defendant after a prove-up and defendant's failure to appear and answer the complaint. On the same day, at 3:30 p.m., the defendant filed a *pro se* general appearance and a verified answer to the complaint to foreclose mortgage in the circuit court clerk's office, admitting he was the mortgagor of the mortgage on the Property for $303,000. However, defendant alleged he had insufficient information with which to admit or deny that Aurora was the agent for the holder of the mortgage and note or that he was in default on the mortgage.

¶ 10      Approximately nine months later, a judicial sale of the Property took place on June 9, 2011, and Aurora was the highest bidder. Aurora filed a motion for an order approving the report of sale and distribution and possession and, on July 13, 2011, the trial court entered

an order approving the report of sale and distribution, confirming the sale, and permitting Aurora's possession of the Property.

¶ 11    On August 12, 2011, approximately one year after the first motion for default was filed, defendant, represented by an attorney, filed a combined motion to quash service and motion to vacate pursuant to section 2-1301 of the Code. In the motion, defendant argued that service was improper because the affidavit of the special process server stated the individual served was a male between the ages of 26 and 30 years while defendant was 61 years old. Defendant also argued that the trial court's judgments were void because Aurora was not a registered debt collector as required by the Act.

¶ 12    On September 9, 2011, Aurora filed a response to the motion, arguing in pertinent part that defendant had waived any objection he had to the court exercising personal jurisdiction over him when he filed a verified answer without objecting to jurisdiction, that the notes of the special process server showed the individual served was approximately 50 years old and the information was "erroneously transcribed" onto the affidavit, that defendant's motion to quash was untimely pursuant to section 15-1505.6 of the Code (735 ILCS 5/15-1505.6 (West Supp. 2011)), and that Aurora was exempt from the requirements of the Act. Attached to the response was a field sheet from the special process server, in which the special process server had handwritten that the individual served was approximately 50 years old.

¶ 13    On September 29, 2011, the trial court denied defendant's motion to quash and granted him leave to amend the motion to vacate. In his amended motion to vacate, defendant restated his prior motion and also argued that "if the Motion to Quash is denied because defendant filed an answer, then the Judgement should be Vacated as Plaintiff is seeking to utilize relief based on a filing that served no purpose." Aurora responded that although the "answer was filed late, the waiver of jurisdictional objections still occurred when the answer was filed, as there is no exception to the statute."

¶ 14    On January 18, 2012, with counsel for both parties present, after hearing oral argument and being "fully advised," the trial court denied the amended motion to vacate.

¶ 15    On appeal, defendant first contends that the trial court erred in denying his motion to quash service because, according to the affidavit of the special process server, the individual served was between the ages of 26 and 30, and defendant was 61 years old. Where the trial court's denial of a motion to quash service is based on documentary evidence only, our review on appeal is *de novo*. *Central Mortgage Co. v. Kamarauli*, 2012 IL App (1st) 112353, ¶ 26.

¶ 16    Aurora argues that defendant waived this argument and submitted to the personal jurisdiction of the court when he filed his verified answer. Defendant agrees that "the filing of an Answer submits" a party to the court's jurisdiction; however, he claims that because Aurora is "seeking to use the filed answer" to show defendant waived any objection to personal jurisdiction, "the default should be vacated because a default cannot exist when an answer is filed."

¶ 17    A party may object to the court's jurisdiction over his person by filing a motion to quash service of process and arguing either that the party is not "amenable to process" of an Illinois court or that process was insufficient. 735 ILCS 5/2-301(a) (West 2010). However:

"If the objecting party files a responsive pleading or a motion (other than a motion for an extension of time to answer or otherwise appear) prior to the filing of a motion in compliance with subsection (a), that party waives all objections to the court's jurisdiction over the party's person." 735 ILCS 5/2-301(a-5) (West 2010).

¶ 18    We agree with Aurora that defendant waived his objections to the court's personal jurisdiction over him by filing his verified answer. The record shows that defendant received an extension of time to file his answer until September 16, 2010, and then on September 22, 2010, received an additional 14-day extension of time to file his answer, giving him until October 6 to file. Defendant filed his answer on October 13, 2010, which was untimely, and nothing in defendant's answer challenged the service of process or the court's exercise of personal jurisdiction over him. According to the plain language of the statute, defendant submitted himself to the court's jurisdiction when he filed his answer.

¶ 19    *Deutsche Bank National Trust Co. v. Hall-Pilate*, 2011 IL App (1st) 102632, supports our decision in the instant case. There, Deutsche Bank filed a foreclosure action against the defendants and, later, a motion for an order of default against them. *Id*. ¶¶ 2-3. The defendants appeared *pro se* and requested time to consult with an attorney. *Id*. ¶ 3. The court granted them 28 days to file an appearance and answer or otherwise plead to the complaint. *Id*. The defendants did not file another appearance or motion, and the trial court granted Deutsche Bank's motion for a default judgment. *Id*. ¶ 4. After a judicial sale was held, Deutsche Bank filed a motion for an order approving the report of sale and distribution. *Id*. The defendants, represented by an attorney, filed an emergency motion to stay the approval of the property sale, which the court denied. *Id*. ¶ 5. Subsequently, with new representation, the defendants filed a motion to quash service. *Id*. ¶ 6 The trial court denied the motion to quash and the defendants' motion to reconsider, after which the defendants appealed. *Id*. ¶¶ 7, 9.

¶ 20    Upon review, we found that the defendants waived any objection to the trial court's jurisdiction when they participated in the case without raising such an objection and submitted to the court's jurisdiction. *Id*. ¶ 18. We held that by "filing a motion seeking relief from the trial court and recognizing its jurisdiction, defendants waived all objections to the trial court's jurisdiction." *Id*. ¶ 21. We also noted that after the defendants filed the emergency motion for a stay, they "did not take any further action in the case until eight months later" when they filed the motion to quash. *Id*. ¶ 17.

¶ 21    Similarly here, defendant filed a verified answer and specifically asked that the trial court deny any relief sought from the plaintiff, effectively recognizing the court's jurisdiction. Defendant did not take any further action until he filed his motion to quash 10 months later. Defendant does not deny that he filed an answer but argues that his answer should not waive his ability to challenge personal jurisdiction because "the filed answer was of no benefit to this pro-se litigation." However, defendant fails to provide reasoning or citation to case law in support of this particular argument, so we find it to be waived. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (the argument section of appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). In addition, the case defendant relies on to suggest "a default cannot exist when an Answer is filed" is distinguishable from the present case. See *Lusk v. Bluhm*, 321

Ill. App. 349 (1944).

¶ 22    In *Lusk*, the plaintiffs filed a complaint against George Meyer and others, and Meyer filed a motion to dismiss the complaint. *Id*. at 350. The trial court dismissed Meyer's motion on April 18, 1941, and "entered a rule against the defendants to plead to the complaint within 30 days." *Id*. The trial court then entered an order of default against Meyer and the other defendants on April 28, 1941, before the 30-day period expired. *Id*. After a bench trial, the trial court found Meyer and the other defendants guilty of fraud and deceit. *Id*. at 351. Meyer moved to set aside the default and judgment, arguing that the default and judgment were entered without notice to him. *Id*. The court granted the motion, vacated and set aside the default and judgment, and the plaintiffs appealed. *Id*. at 350. The reviewing court found that the default judgment was entered improperly, noting that "the default was taken against [Meyer] *** long before the rule had expired, and before the defendant, George Meyer, could be in default for not filing an answer." *Id*. at 353.

¶ 23    *Lusk* did not involve a question of whether the defendant waived his right to challenge personal jurisdiction, but rather involved the improper entry of a default judgment. Here, defendant requested and was granted two extensions of time to answer Aurora's complaint, but failed to timely file his answer. The *Lusk* court's entry of default against Meyer was improper because it was entered before Meyer's opportunity to respond had expired whereas defendant here was given a full opportunity to respond. We find *Lusk* to be inapposite to the present case and defendant offers no explanation of how *Lusk* supports him. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

¶ 24    Finally, it must be noted that the default judgment entered in this case has no bearing on whether defendant submitted to the court's jurisdiction. Nor did his failure to answer timely have any bearing on whether the court had jurisdiction over defendant. Had defendant appeared in front of the judge at 8:45 a.m. and filed his answer and appearance, and no default had been entered, he still would have submitted to the jurisdiction of the trial court. That is because when defendant filed his answer, he did not comply with section 2-301(a) of the Code, and he thereby waived all objections to the court's jurisdiction. 735 ILCS 5/2-301(a-5) (West 2010).

¶ 25    Defendant next contends that Aurora is a collection agency under the Act and that, because Aurora failed to register as a collection agency before filing suit as required by the Act, the trial court's judgments are void. Aurora responds that it is exempt from the requirements of the Act because it is a subsidiary of a federal savings bank and, in the alternative, that the registration provision of the Act is preempted by the Home Owners' Loan Act (12 U.S.C. § 1461 *et seq*. (2006)). In support of its claim that it is a subsidiary of a federal savings bank, Aurora has asked that we take judicial notice of documents Aurora appended to its response brief showing its subsidiary status. Aurora has also cited to several cases in which the court specifically found that Aurora was an operating subsidiary of a federal savings bank. Defendant responds that Aurora "offered no evidence whatsoever" to prove its status as a subsidiary before the trial court and filed a motion to strike the documents attached to Aurora's brief, which motion we took with the case.

¶ 26    As to this issue, the parties disagree on our standard of review. Defendant argues that the

standard of review should be *de novo*, while Aurora claims it should be an abuse of discretion. In support of his argument, defendant cites *People v. Vincent*, 226 Ill. 2d 1 (2007). However, *Vincent* involved a petition filed pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2010)), whereas here defendant filed a motion to vacate under section 2-1301 of the Code (735 ILCS 5/2-1301 (West 2010)). We agree with Aurora that we review a trial court's denial of a section 2-1301 motion to vacate for an abuse of discretion. *Standard Bank & Trust Co. v. Madonia*, 2011 IL App (1st) 103516, ¶ 8; *Deutsche Bank National v. Burtley*, 371 Ill. App. 3d 1, 5 (2006). An abuse of discretion occurs when the trial court "acts arbitrarily without the employment of conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted." *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941 (1999). In addition, the reviewing court must determine whether the trial court's decision " 'was a fair and just result, which did not deny [the moving party] substantial justice.' " *Burtley*, 371 Ill. App. 3d at 5 (quoting *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001)).

¶ 27 Section 2-1301(e) provides that a trial court "may on motion filed within 30 days after entry [of an order of default] set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e) (West 2010). The moving party has the burden of showing sufficient grounds to vacate the judgment of default. *Larson v. Pedersen*, 349 Ill. App. 3d 203, 207 (2004).

¶ 28 The purpose of the Act is to "protect consumers against debt collection abuse." 225 ILCS 425/1a (West 2010). It provides that "[n]o collection agency shall operate in this State, *** engage in the business of collecting, solicit claims for others, *** exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act." 225 ILCS 425/4 (West 2010). The Act defines a "collection agency" or a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." 225 ILCS 425/2 (West 2010). "Debt collection" is defined as "any act or practice in connection with the collection of consumer debts" and " '[c]onsumer debt' *** means money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction." *Id*. Finally, a "consumer credit transaction" is a "transaction between a natural person and another person in which property, service, or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." *Id*. The First District has held that a complaint filed by an unregistered collection agency is a nullity and therefore any judgment based on the complaint is void. *LVNV Funding, LLC v. Trice*, 2011 IL App (1st) 092773, ¶ 19. However, the Act does exempt certain institutions from its requirements:

"This Act does not apply to persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency, and specifically does not include the following:

1. Banks, including trust departments, affiliates, and subsidiaries thereof, fiduciaries, and financing and lending institutions (except those who own or operate collection agencies)[.]" 225 ILCS 425/2.03 (West 2010).

¶ 29	In support of his claim that Aurora is a collection agency, defendant primarily relies on *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1 (1991). There, the State filed a complaint against the city of Chicago (City) and Datacom. *Id*. at 9-10. In it, the State alleged that Datacom provided services to the City to collect municipal fines in exchange for monetary compensation and received up to 42% of the monies it collected. *Id*. at 22. At the same time, the Department of Registration and Education (Department) brought an administrative action against Datacom, alleging that Datacom's collection of parking tickets for the City violated the Act. *Id*. at 10. The trial court granted the City and Datacom's joint motion to dismiss. *Id*. Datacom was also granted leave to file a third-party complaint against the Department claiming it was not subject to the requirements of the Act and received both a declaratory judgment against the Department and injunctive relief from the Department's attempt to enforce the Act. *Id*. The State and Department both appealed, and the case was reversed and remanded by the appellate court, which concluded, in pertinent part, that Datacom was subject to the Act. *Id*. Datacom and the City appealed. *Id*. at 11. The supreme court consolidated those appeals and considered whether Datacom was a collection agency as defined by the Act. *Id*. at 22. Datacom argued that it "merely provided data processing services" to the City and it was not engaged in debt collection. *Id*. at 23. The supreme court disagreed. *Id*. Looking to the complaint, the supreme court concluded that Datacom was engaging in "full-scale collection actions." *Id*.

¶ 30	Since the date that *Datacom* case was decided, the Act has been amended. Moreover, while Datacom was engaged in the collection of parking ticket fines, the instant case involves a mortgage foreclosure action. The parties have not cited nor have we found an Illinois case that has considered whether foreclosing on a mortgage is "debt collection" pursuant to the statute. However, several courts in other jurisdictions have considered whether a mortgage foreclosure is "debt collection" for the purposes of similar statutes, including the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 *et seq*. (2006)), and California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Cal. Civ. Code § 1788 *et seq*. (West 2010)).

¶ 31	The FDCPA aims to eliminate abusive, deceptive, unfair debt collection practices by debt collectors. 15 U.S.C. § 1692(a), (e) (2006). The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, *** are primarily for personal, family, or household purposes" (15 U.S.C. § 1692a(5) (2006)). It defines a "debt collector" as:

> "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (2006).

The statute exempts certain categories of persons from its definition of "debt collector," including:

> "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity *** (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time

it was obtained by such person." 15 U.S.C. § 1692a(6)(F) (2006).

¶ 32    There is a split in decisions from jurisdictions that have considered whether foreclosing on a mortgage is "debt collection" for the purposes of the FDCPA. It appears that the majority view is that mortgage foreclosure is not debt collection within the meaning of the FDCPA. *Glazer v. Chase Home Finance LLC*, 704 F.3d 453, 460 (6th Cir. 2013). This was the view taken by the United States District Court for the District of Oregon in *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002). There, Ocwen Federal Bank had loaned money to the plaintiffs to be repaid pursuant to a note, a purchase money deed of trust, and adjustable rate rider. *Id*. at 1203. The *Hulse* court concluded that, based on the definitions provided, a debt collector under the FDCPA was a person who was attempting to collect a debt. *Id*. at 1204 (citing 15 U.S.C. § 1692a(6) (2000)). The court went on to distinguish foreclosing on a trust deed from the collection of an obligation to pay money because "[p]ayment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." *Id*. The court then held "the activity of foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA" because foreclosure by a trustee is not an attempt to collect funds from a debtor. *Id*. at 1204 (agreeing with *Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716 (N.D. W. Va. 1998), *aff'd*, 173 F.3d 850 (4th Cir. 1999) (table) (finding that foreclosing pursuant to a deed of trust is not collecting on a debt, and therefore does not fall within the terms of the FDCPA)).

¶ 33    Other federal district courts have concluded similarly. See *Speleos v. BAC Home Loans Servicing, L.P.*, 824 F. Supp. 2d 226, 232-33 (D. Mass. 2011) (finding that because the FDCPA distinguishes debt collection from the enforcement of security interests in its definition of "debt collector," a company enforcing a security interest cannot be held liable under the FDCPA); *Castro v. Executive Trustee Services, LLC*, No. CV-08-2156-PHX-LOA, 2009 WL 438683 (D. Ariz. Feb. 23, 2009) (agreeing with *Hulse* that foreclosing on a trust deed is different than collecting money from a debtor); *Izenberg v. ETS Services, LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008) (finding that " 'foreclosing on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA' " (quoting *Ines v. Countrywide Home Loans, Inc.*, No. 08-CV-1267, 2008 WL 4791863 (S.D. Cal. Nov. 3, 2008) (citing *Hulse*, 195 F. Supp. 2d at 1204))); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) (finding that security enforcement activities are not debt collection practices and therefore fall outside the scope of the FDCPA); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985) (holding that the legislative history of the FDCPA "indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned").

¶ 34    The minority view taken is that the act of foreclosing on a mortgage is the collection of a debt according to the FDCPA. See *Glazer*, 704 F.3d at 464; *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) (concluding that a party who falls under the general definition of "debt collector" is a debt collector for the purposes of the FDCPA as a whole, regardless of whether the party is enforcing a security interest); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378-79 (4th Cir. 2006) (holding that the defendants' foreclosure action was

an attempt to collect a debt). In *Glazer*, the Sixth Circuit disagreed with the majority view and noted that the FDCPA does not define "debt collection" but provides various "guideposts." *Glazer*, 704 F.3d at 460. It found that, based on the statute's definition of "debt" and its focus on the underlying transaction, whether an obligation was a "debt" depended on the purpose for which the debt was incurred, and not whether the obligation was secured. *Id*. at 461. The court concluded "a home loan is a 'debt' even if it is secured." *Id*. Ultimately, the *Glazer* court held that mortgage foreclosure fell under the definition of "debt collection" under the FDCPA *Id*. at 464.

¶ 35    While the FDCPA's definition of "debt collector" differs from the Act's definition, the Rosenthal Act's definitions of both "debt collector" and "debt collection" are almost identical to those of the Act.[2] See Cal. Civ. Code § 1788.2 (West 2010). California courts have held that the foreclosure of a property pursuant to a deed of trust is not debt collection within the meaning of the Rosenthal Act. *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1151 (E.D. Cal. 2010); *Gardner v. American Home Mortgage Servicing, Inc.*, 691 F. Supp. 2d 1192, 1198 (E.D. Cal. 2010); *Castaneda v. Saxon Mortgage Services, Inc.*, 687 F. Supp. 2d 1191, 1197 (E.D. Cal. 2009) (citing *Izenberg*, 589 F. Supp. 2d at 1199); *Rosal v. First Federal Bank of California*, 671 F. Supp. 2d 1111 (N.D. Cal. 2009); *Swanson v. EMC Mortgage Corp.*, No. CV F 09-1407 LJO DLB, 2009 WL 3627925, *4 (E.D. Cal. Oct. 29, 2009) (citing *Hulse*, 195 F. Supp. 2d at 1204).

¶ 36    In this appeal we need not decide whether a mortgage foreclosure action is debt collection under the Act because we find Aurora is a subsidiary of a bank and exempt from the requirements of the Act.

¶ 37    An appellate court may take judicial notice of readily verifiable facts if doing so "will 'aid in the efficient disposition of a case,' " even if judicial notice was not sought in the trial court. *Department of Human Services v. Porter*, 396 Ill. App. 3d 701, 725 (2009) (quoting *Muller v. Zollar*, 267 Ill. App. 3d 339, 341-42 (1994)). Specifically, a reviewing court may take judicial notice of a written decision that is part of the record of another court because these decisions are readily verifiable facts that are capable of " 'instant and unquestionable demonstration.' " *Hermesdorf v. Wu*, 372 Ill. App. 3d 842, 850 (2007) (quoting *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976), quoting 9 John Henry Wigmore, Evidence § 2571, at 548 (3d ed. 1940)).

¶ 38    In its brief, Aurora cited several federal cases in which the courts took judicial notice of documents that established Aurora is a wholly owned subsidiary of Aurora Bank, formerly Lehman Brothers Bank, a federally chartered savings bank. See *Grant v. Aurora Loan Services, Inc.*, 736 F. Supp. 2d 1257, 1275 (C.D. Cal. 2010) ("Aurora is a wholly-owned subsidiary of Lehman, a federal savings bank ***."); *Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F. Supp. 2d 1048, 1053 (N.D. Cal. 2009) ("Aurora Bank is

---

[2]The only substantive difference between the statutes' definitions of "debt collection" and "debt collector" is that the Rosenthal Act specifically excludes attorneys and counselors at law from its definition of "debt collector" and the Act does not. Compare Cal. Civ. Code § 1788.2(c) (West 2010), and 225 ILCS 425/2 (West 2010).

-10-

a federally chartered savings bank; Aurora Loan Services, Inc., is its wholly owned subsidiary."); see also *Wornum v. Aurora Loan Services, Inc.*, No. C-11-02189, 2011 WL 3516055, *2 (N.D. Cal. Aug. 11, 2011) ("Aurora Loan Services is a wholly owned operating subsidiary of Aurora Bank, FSB *** formerly known as Lehman Brothers, FSB."); *Yau v. Deutsche Bank National Trust Co., Americas*, No. SACV 11-00006-JVS, 2011 WL 8327957, *3 (C.D. Cal. May 9, 2011) ("Aurora [Loan Services, LLC,] is a wholly-owned subsidiary of Aurora Bank, FSB, a federally chartered bank."); *Ibarra v. Loan City*, No. 09-CV-02228-IEG, 2010 WL 415284, *5 (S.D. Cal. Jan. 27, 2010) (finding that "Aurora has submitted ample evidence that it is a wholly owned operating subsidiary of a federally chartered bank, Aurora Bank, FSB, formally Lehman Brothers Bank"). We take judicial notice of these written decisions and find that Aurora is a subsidiary of a bank and exempt from the Act. Therefore, we find the trial court properly denied defendant's motion to vacate and we need not reach Aurora's alternative argument that the registration requirement of the Act is preempted by federal law.

¶ 39　　In light of the decision above, and because we are not considering the documents Aurora attached to its appellate brief, defendant's motion to strike is denied.

¶ 40　　For the foregoing reasons, we affirm the judgment of the trial court.


¶ 41　　Affirmed.