2024 IL App (1st) 231067-U

SIXTH DIVISION
September 20, 2024

No. 1-23-1067

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| Maureen Rooney, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 20 L 006830 |
| | ) | |
| L. Douglas DiBartelo, | ) | The Honorable |
| | ) | Catherine A. Schneider, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices C.A Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court properly denied DiBartelo's motions to vacate default judgment under 735 ILCS 5/2-1301 and 735 ILCS 5/2-1401.

¶ 2                                I. BACKGROUND

¶ 3    In 2017, Plaintiff-Appellee Maureen Rooney informed her employer, Defendant-Appellant L. Douglas DiBartelo, that she intended to take maternity leave. On September 28, 2017, DiBartelo terminated Rooney from her full-time position at the L. Douglas DiBartelo Agency, Inc. and offered her part-time employment without benefits. Her former full-time position provided benefits, including, among other things, vacation, sick leave, retirement benefits, maternity leave,

and the right to return to her former position after maternity leave. Although DiBartelo informed Rooney that her termination was for financial reasons, he also told her "that going from full-time to part-time would be better for her and her unborn baby."

¶ 4      On May 2, 2019, Rooney filed a charge with the Illinois Department of Human Rights (IDHR) alleging pregnancy discrimination and retaliation. On April 1, 2020, the IDHR informed Rooney that the time limitation for the IDHR to complete its investigation had expired, and that Rooney had the right to sue DiBartelo. Rooney filed her complaint in the circuit court against DiBartelo on June 26, 2020, alleging that he discriminated against her by terminating her because she was pregnant, in violation of the Illinois Human Rights Act. She further alleged that her termination caused her to suffer damages in the form of "physical injury, physical pain and suffering, humiliation, embarrassment, mental anguish, and emotional distress."

¶ 5      DiBartelo was served a copy of the summons and complaint in person by the Sheriff's Office on November 25, 2020, but he failed to file an appearance or a response to the complaint within 30 days. On May 6, 2021, Rooney filed a motion to default DiBartelo pursuant to 735 ILCS 5/2-1301(d) (West 2020). The circuit court set a hearing on the motion for May 20, 2021. DiBartelo was served a copy of the motion via United States mail on May 10, 2021, but he did not appear in court. The circuit court entered an order defaulting DiBartelo on May 20, 2021, and set a hearing on August 26, 2021, as an initial date for prove-up of damages. Ultimately, after continuing the prove-up at least 10 times due to DiBartelo's failure to appear, the circuit court set the prove-up hearing for February 10, 2022. DiBartelo appeared in court virtually on February 10, 2022, but he failed to file an appearance or obtain counsel. The court ordered a continuance until March 10, 2022, so that DiBartelo could file an appearance through counsel or appear *pro se*, but he failed to

do either. On May 5, 2022, after DiBartelo again failed to appear in court, the circuit court entered a default judgment in favor of Rooney against DiBartelo in the amount of $69,399.

¶ 6     On June 15, 2022, over thirty days after the default judgment was entered by the circuit court, DiBartelo filed a *pro se* motion titled, "Defendant's Motion to Vacate Judgment of May 5, 2022." In it, DiBartelo stated that: (1) Rooney had agreed on April 11, 2022, to postpone the May 5, 2022, court date because DiBartelo was unavailable due to a medical emergency; (2) the parties had reached a tentative settlement for $18,000; (3) DiBartelo informed Rooney by facsimile communication on May 11, 2022, that he was back in Chicago and wished to finalize the settlement agreement; and (4) DiBartelo learned of the May 5, 2022, default judgment order on May 17, 2022. While DiBartelo did not specify that his Motion to Vacate Judgment was filed pursuant to 735 ILCS 5/2-1301, he claimed that "th[e] motion [was] within thirty (30) days of the filing with the Clerk of the Court." DiBartelo never noticed his motion to vacate for a hearing.

¶ 7     Meanwhile, Rooney had filed six citations to discover DiBartelo's assets before the Honorable Patrick Heneghan, who was presiding over the enforcement of judgment proceedings. The citations were filed and served on DiBartelo and the banks where he maintained accounts, but DiBartelo failed to appear, either in court or for the citation examination proceedings. On December 19, 2022, DiBartelo filed a *pro se* motion asking the court to stay the enforcement proceedings until the Honorable James Snyder — who entered the default judgment against him — ruled on his Motion to Vacate Judgment. The record does not indicate whether the circuit court ruled on this motion to stay the enforcement proceedings.

¶ 8     On February 23, 2023, counsel for DiBartelo entered an appearance, refiled DiBartelo's original *pro se* "Motion to Vacate Judgment of May 5, 2022," and also filed a "Petition to Vacate Void Judgment Order Pursuant to 735 ILCS 5/2-1401 and For Other Relief". The crux of the

section 2-1401 motion was that the circuit court lacked subject matter jurisdiction over Rooney's case because her complaint failed to allege that she complied with pre-suit exhaustion requirements. On March 10, 2023, DiBartelo filed a "Motion to Amend Section 2-1301 Motion to Vacate," in which he asked the court to "convert [his] previously filed motion to vacate pursuant to 735 ILCS 5/2-1301 to a motion brought under 735 ILCS 5/2-1401." In it, he asserted that although the prove-up hearing was set for May 5, 2022, the court did not enter judgment for Rooney until the Clerk of the Circuit Court of Cook County entered the order on May 16, 2022. DiBartelo acknowledged, however, that he received "a copy of the actual judgment order, which is dated May 5, 2022," from Rooney's attorney, and admitted that his initially-filed motion to vacate, which was filed on June 15, 2022, "appears to have been filed beyond the 30 day cut-off required under Section [2-]1301." Accordingly, he argued it was necessary to convert the section 2-1301 motion to a section 2-1401 motion to "ensure that this court has jurisdiction to hear the originally filed [2-]1301 motion."

¶ 9    On April 13, 2023, an agreed order was entered by Judge Heneghan, requiring DiBartelo to deposit $80,000 with the Clerk pending resolution of DiBartelo's motions to vacate the default judgment. The agreed order stated that if DiBartelo's pending motions to vacate were denied, "the proceeds held by the Clerk of the Circuit Court shall be paid to Plaintiff to satisfy [the] judgment order . . . ." DiBartelo deposited $80,000 with the Clerk on April 24, 2023.

¶ 10    On June 6, 2023, the circuit court, by the Honorable Catherine A. Schneider, denied DiBartelo's section 2-1301 motion, section 2-1401 motion, and his motion to amend and convert his section 2-1301 motion into a section 2-1401 motion. Although there is no report of the proceedings, the Bystander's Report indicates that the court found DiBartelo's section 2-1301 motion (his initially filed motion to vacate) untimely because the default judgment was "properly

entered and signed by the court with a date of May 5, 2022," not May 16, 2022. The court also stated that DiBartelo failed to comply with Cook County Circuit Court Rules 2.1(d) and 2.3, which respectively require (1) service of any motion within three court days of filing, and (2) the filing party to call the motion for hearing within ninety days. The court then denied DiBartelo's motion to convert his section 2-1301 motion to a section 2-1401 motion because DiBartelo had already filed a separate section 2-1401 motion claiming the court lacked subject matter jurisdiction, and "a party cannot file multiple Section 2-1401 motions." In addition, the court stated that DiBartelo's motion did not demonstrate due diligence and a meritorious defense, as required by section 2-1401.

¶ 11    On June 12, 2023, DiBartelo filed a timely appeal, accompanied by an Illinois Supreme Court Rule 305 motion requesting that the court stay enforcement of the May 5, 2022, judgment order pending resolution of the appeal.

¶ 12    On June 14, 2023, Rooney filed a motion seeking the disbursement of funds DiBartelo had deposited with the Clerk. She argued that pursuant to the terms of the Agreed Order, the Clerk was required to disburse the funds to her when the circuit court denied DiBartelo's motions to vacate on June 6, 2023. On June 27, 2023, Rooney filed a motion to dismiss DiBartelo's appeal pursuant to Illinois Supreme Court Rule 309 in circuit court, arguing that DiBartelo impliedly waived his right to appeal the denial of his motions to vacate when he signed the Agreed Order on April 13, 2023.

¶ 13    On July 5, 2023, the circuit court issued two orders: the first order struck Rooney's motion to dismiss DiBartelo's appeal, and the second order granted DiBartelo's motion to stay enforcement of the judgment proceedings pending resolution of his appeal.

¶ 14                                    II. ANALYSIS

¶ 15    A. DiBartelo Did Not Waive his Right to Appeal the Denial of his Motions to Vacate by Signing the April 13, 2023, Agreed Order.

¶ 16    First, we address Rooney's waiver argument. Rooney contends that DiBartelo impliedly waived his right to appeal by entering into the Agreed Order of April 13, 2023, which states that "[i]n the event the parties do not settle this case, and upon entry of an order denying the motions to vacate pending before Judge Schneider, the proceeds held by the Clerk of the Circuit Court shall be paid to Plaintiff to satisfy the judgment order . . . ." According to Rooney, the Agreed Order constituted a "good faith agreement to forego post-judgment proceedings" in exchange for a promise by DiBartelo that the funds he deposited with the Clerk would be disbursed to her if DiBartelo's post-judgment motions were denied by the circuit court. Rooney argues that the Agreed Order is an "enforceable contract between the parties" that is governed by principles of contract construction. Based on these principles, Rooney asserts that by entering into an agreement that states the funds were to be disbursed "upon the decision on the motions" in her favor, DiBartelo implicitly agreed not to appeal the circuit court's rulings adverse to him.

¶ 17    While DiBartelo agrees that the Agreed Order is an enforceable contract governed by contract construction principles, he argues that the Agreed Order has no bearing on his right to appeal the circuit court's decision to deny his motions to vacate, and disputes Rooney's assertion that his assent implied that he waived his right to appeal. Rather, DiBartelo claims that the principles of contract construction "require the conclusion that there is no provision in the April 13, 2023, Agreed Order whereby [DiBartelo] waived the right to appeal."

¶ 18    We agree that DiBartelo did not waive his right to appeal the denial of his motions to vacate and amend when he signed the Agreed Order on April 13, 2023, impliedly or otherwise. An agreed

order is treated as a contract and the principles of contract law apply. *In re Marriage of Tutor*, 2011 IL App (2d) 100187, ¶ 13. "An agreed order is not a judicial determination of the parties' rights; it is a recitation of an agreement between the parties and is subject to the rules of contract interpretation." *Id.* When interpreting a contract, "[t]he cardinal rule is to give effect to the parties' intent." *Virginia Sur. Co., Inc. v. N. Ins. Co. of New York*, 224 Ill. 2d 550, 556 (2007). The plain and ordinary meaning of the language best conveys the parties' intent; therefore, "[i]f the contract language is unambiguous, it should be given its plain and ordinary meaning." *Id.* Contract interpretation is a question of law subject to *de novo* review. *Ritacca Laser Ctr. v. Brydges*, 2018 IL App (2d) 160989, ¶ 15.

¶ 19     A waiver arises "from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 326 (2004). Waivers may be express or implied and may be inferred from a party's conduct. *Id.* However, "[w]here an important statutory right is at issue, an explicit manifestation of intent is required before the right in question can be deemed waived." *Gallagher v. Lenart*, 226 Ill. 2d 208, 238-39 (2007) (finding that the waiver of a workers' compensation lien must be explicitly stated due to the "integral role the workers' compensation lien plays in the workers' compensation scheme" and concluding that "general language" was insufficient "to effect such a waiver"). Assuming a waiver exists when the contract is silent on its existence defies the explicit-waiver rule. *In re Marriage of Tutor,* 2011 IL App (2d) 100187, ¶ 15. A waiver may only be inferred from conduct when the conduct is "inconsistent with any other intention than to waive [the right]." *Ryder v. Bank of Hickory Hills*, 146 Ill. 2d 98, 105 (1991). According to our supreme court, an "[i]mplied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* Importantly, "[t]here is a strong presumption against provisions

that easily could have been included in the contract but were not." *Klemp v. Hergott Grp., Inc.*, 267 Ill. App. 3d 574, 581 (1994).

¶ 20    Here, a plain reading of the Agreed Order does not indicate that DiBartelo intended to waive his right to appeal. Nowhere in the Agreed Order does DiBartelo explicitly waive his right to appeal the court's rulings on his section 2-1301 and 2-1401 motions. And nothing about DiBartelo's conduct amounts to an implied waiver either. Accordingly, to find that DiBartelo waived his right to appeal just by signing the Agreed Order would contravene the explicit-waiver rule. *Gallagher v. Lenart*, 226 Ill. 2d at 238. This is particularly so when a provision indicating that DiBartelo was waiving his right to appeal the circuit court's adverse ruling on his motions to vacate could easily have been inserted into the Agreed Order but was not. Because no such provision was included, a "strong presumption" exists that DiBartelo never waived his right to appeal when he signed the Agreed Order. *Klemp v. Hergott Grp., Inc.*, 267 Ill. App. 3d at 581. Accordingly, we find that DiBartelo did not waive his right to appeal the denial of his motions to vacate when he signed the Agreed Order on April 13, 2023. We now turn to the merits of his appeal.

¶ 21    B. The Circuit Court Properly Denied DiBartelo's Section 2-1301 Motion to Vacate the May 5, 2022, Default Judgment

¶ 22    DiBartelo claims that his Motion to Vacate the May 5, 2022, default judgment, which was filed on June 15, 2022, was erroneously denied as untimely. He contends that, pursuant to Illinois Supreme Court Rule 272 (Rule 272), the default judgment only became "final" on May 16, 2022, when it was entered by the Clerk, rendering his motion to vacate timely because it was filed within 30 days of entry of the default judgment by the Clerk. 735 ILCS 5/2-1301 (West 2022). Rooney

argues in response that the circuit court correctly applied Rule 272 to conclude that the default judgment became "final" on May 5, 2022, making DiBartelo's motion untimely.

¶ 23    The circuit court's denial of a motion to vacate under section 2-1301 is reviewed for an abuse of discretion. *People ex rel. Reid v. Adkins*, 48 Ill. 2d 402, 407 (1971); *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 26. A court abuses its discretion when it "acts arbitrarily without the employment of conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted." *Marren Builders, Inc. v. Lampert,* 307 Ill. App. 3d 937, 941 (1999).

¶ 24    The facts are not in dispute; thus, the sole issue here is whether the judgment became "final" under Rule 272 on May 5, 2022, when the order was signed by Judge Snyder, or on May 16, 2022, when it was entered by the Clerk. Rule 272 states:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record. Orders and judgments may be prepared, presented, and signed electronically, if permitted by the Supreme Court." Ill. S. Ct. R. 272 (eff. Jan. 1, 2018).

¶ 25    According to DiBartelo, the default judgment order was not "filed" or "entered of record" by the court clerk on May 5, 2022, and therefore the judgment did not "become[] final" that day. The Clerk's case summary computer entry for May 5, 2022, states that a prove-up was held. Although the judgment order itself, which is signed by Judge Snyder and dated May 5, 2022, is

attached to the case summary entry, DiBartelo contends that the attached document only shows the first page of the two-page judgment order, and does not show "the important second page, which would show if the [circuit] court signed the order." Thus, DiBartelo argues that the order did not become "final" until May 16, 2022, because that is when the Clerk's case summary computer entry indicates that judgment in favor of Rooney was entered. DiBartelo contends that, pursuant to Rule 272, an order only becomes "final" when it is "filed" or entered into the "law record"—which he equates to the Clerk's case summary computer entry. In short, because the judgment order was not "filed" on May 5, 2022, it cannot be the date the order became "final" under Rule 272.

¶ 26    Rule interpretation, like statutory interpretation, is a question of law and is reviewed *de novo* by this Court. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002). Our supreme court has held that a judgment is only "effective," or "final" when it has been publicly expressed, in words, at the situs of the proceeding. *Granite City Lodge No. 272, Loyal Ord. of Moose v. City of Granite City,* 141 Ill. 2d 122, 127 (1990). In *Granite City,* our supreme court considered whether the defendant's post-trial motion for an extension of time to file an appeal was erroneously denied by the circuit court. *Id.* at 123. The defendant argued on appeal that the circuit court's order denying his post-trial motion was not "final" under Rule 272 when the court signed it on June 26, 1989, because the defendant did not have actual notice of the order until October 11, 1989. *Id.* at 126. Our supreme court disagreed, and held that the circuit court's order denying the defendant's motion was "final" on June 26, 1989, because that was the day the circuit court denied the petition in court, "signed the order," and "filed it with the clerk." *Id.* at 127. That was enough to satisfy the three "essential elements" that make a judgment "effective": (1) a "public expression," (2) "in words," (3) "at the situs of the case." *Id.* at 126-127. Therefore, our supreme court concluded that the defendant's

post-trial motion was properly denied by the circuit court as untimely because the defendant's deadline to file a notice of appeal was 30 days from June 26, 1989, even though the defendant claimed he did not learn about the circuit court's order until months later. *Id.*

¶ 27    In *People v. Perez,* this Court considered whether an order became "final" when the circuit court signed and dated the order, or whether it only became "final" when the circuit clerk filed it the next day. 2013 IL App (2d) 110306, ¶ 5. There, the defendant filed a post-conviction petition on November 9, 2010, alleging ineffective assistance of postconviction counsel. *Id.* ¶ 3. The circuit court signed an order denying the petition on February 7, 2011. *Id.* However, the circuit clerk did not file the order until February 8, 2011. *Id.* The defendant argued that the order dismissing his petition was void because it did not become "final" until February 8, the day after the court's 90-day period of time to issue its order had expired. *Id.* ¶ 1; see 725 ILCS 5/122-2.1(a) (West 2022) ("[w]ithin 90 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section.") The State argued in response that the order became "final" – and therefore was timely under the statute – at the moment the court signed and dated the order on February 7. *Id.* ¶ 5. This Court disagreed, and held that the order did not become final until February 8, 2011, when it was filed by the clerk, reasoning that although the circuit court signed the order on February 7, "no hearing or public court appearance" occurred that day. *Id.* ¶ 25. Therefore, the "public expression of the trial court's action[,]" which was necessary for the incarcerated, *pro se* defendant to learn of the court's action, did not occur until the circuit clerk filed the order. *Id.*

¶ 28    Here, for the reasons that follow, we find that, under Rule 272, the circuit court's default judgment order was filed and became "final" on May 5, 2022, thereby making DiBartelo's section 2-1301 motion to vacate untimely. First, there is no dispute that a prove-up hearing—that

DiBiartelo had full knowledge of—was held on May 5, 2022. Second, there is no dispute that the circuit court announced its decision that day, or that its signed and dated order, in which it granted the default judgment against DiBartelo, was filed and made available to both parties on the Clerk's website that same day. Although DiBartelo initially claimed he could only access the first page of the order, he later conceded that he could access the full order under the May 5, 2022, case summary computer entry. Therefore, the three essential elements for "effective court action" (*City of Granite City,* 141 Ill. 2d at 127), were satisfied when the circuit court publicly expressed its decision at the May 5, 2022, hearing, and its signed and dated default judgment order was published on the Clerk's website that same day.

¶ 29    Even if we were to agree with DiBartelo that the default judgment order was not "filed" until May 16, 2022, when the Clerk made the case summary computer entry, "Judgment for Plaintiff", there are three reasons why it would not affect our conclusion that the circuit court did not abuse its discretion in denying DiBartelo's section 2-1301 motion. First, unlike in *Perez*, where no "public hearing or court appearance" took place the day the court signed the order (*Perez,* 2013 IL App (2d) 110306, ¶ 25), a public hearing took place here on May 5, 2022. Moreover, DiBartelo had notice of the May 5, 2022, hearing and of the fact that the court entered its default judgment order on that date, because he titled his motion, "Defendant's Motion to Vacate Judgment of May 5, 2022." In this motion, he admits to having "learned of the May 5, 2022 ex parte judgment on May 17, 2022," well over two weeks before the expiration of the thirty-day deadline to file a timely section 2-1301 motion. Unlike the defendant in *Perez*, who could not possibly have learned of the court's decision before it was filed by the clerk, DiBartelo was aware that a hearing took place and he learned on May 17, 2022, that a judgment was entered against him, leaving him ample opportunity to file a timely motion to vacate. See *Esczuk v. Chicago Transit Authority,* 39 Ill. 2d

464, 467 (1968) ("It has long been held that once a court acquires jurisdiction, it is the duty of the litigants to follow the case."); *cf. Dunn v. Patton*, 307 Ill. App. 3d 375, 379 (1999) (holding that because plaintiff "could not discover the entry of the written judgment by examining the record sheet" until June 29, 1998, the trial court's December judgment "was not made public, in words, at the situs of the proceedings" before then). Thus, because the default judgment order was publicly expressed in court, reduced to words, and signed by the judge on May 5, 2022, it was "final" on that date.

¶ 30    Second, in bringing his section 2-1301 motion to vacate, DiBartelo failed to comply with Cook County Circuit Court Rule 2.3, which provides that "the burden of calling for hearing any motion previously filed is on the party making the motion. If any such motion is not called for hearing within 90 days from the date it is filed, the court may enter an order overruling or denying the motion by reason of the delay." Cook Co. Cir. Ct. R. 2.3 (eff. July 1, 1976). DiBartelo did not call his motion for hearing until February 23, 2023, 253 days after he initially filed it, so the circuit court did not abuse its discretion by denying the motion. See *In re Marriage of Izzo,* 264 Ill. App. 3d 790, 792 (1994) (finding the trial court did not abuse its discretion when it denied petitioner's motion for attorney fees because petitioner did not seek to have a hearing on the matter within 90 days of filing as required by Cook County Circuit Court Rule 2.3).

¶ 31    Third, notions of substantial justice do not require this Court to conclude that the circuit court abused its discretion in denying the motion. See *In re Haley D.,* 2011 IL 110886, ¶ 69 (noting that when a court is presented with a section 2-1301 motion to set aside a default judgment, the main question is "whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits"). Although a "liberal policy" exists with respect to vacating default judgments under section 2-1301

(*Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 16), courts are justified in denying motions to vacate when parties refuse to participate in court proceedings despite notice and an ample opportunity to do so. See *In re Marriage of Harnack and Fanaty*, 2014 IL App (1st) 121424, ¶¶ 46-47 (finding the trial court did not abuse its discretion when it refused to consider husband's section 2-1301 motion to set aside a judgment for dissolution of marriage when he exhibited a "complete refusal to participate in the dissolution proceedings for more than 15 months," attempted to evade service of process and refused to comply with court orders, reasoning that "it would not be reasonable to vacate the judgment and force [his ex-wife] to proceed to trial on her petition for dissolution of marriage a second time where any alleged errors in the judgment or inequalities in the distribution of assets are solely due to [the husband's] failure to participate in the dissolution proceedings"); *cf. McCluskey*, 2013 IL 115469, ¶ 31 (finding no error when the trial court denied the defendant's motion to vacate the default judgment because, even under the standards of section 2-1301, the defendant, despite being properly served and having notice of the default, waited until 10 months after the default judgment and sale of her home to raise her pleading defenses for the first time even though she had ample opportunity to do so before judgment).

¶ 32   DiBartelo has failed to show the circuit court abused its discretion; therefore, we affirm the circuit court's decision to deny DiBartelo's 2-1301 motion to vacate the default judgment.

¶ 33   C. DiBartelo's Motion to Vacate the May 5, 2022, Default Judgment Under 735 ILCS 5/2-1401 Fails Because he did not Support it with an Affidavit or Exercise Diligence

¶ 34   DiBartelo next contends that the circuit court erred in denying his motion to vacate under section 2-1301 based on a technicality instead of converting the motion to a section 2-1401 motion and granting it on its merits. According to the Bystander's Report, the circuit court denied DiBartelo's motion to convert his section 2-1301 motion to a section 2-1401 motion because

DiBartelo had already filed a motion to vacate under section 2-1401 and "a party cannot file multiple Section 2-1401 motions." DiBartelo argues on appeal that parties may file multiple section 2-1401 motions to vacate, and that the circuit court erred by refusing to consider his second section 2-1401 motion on its merits.

¶ 35    A dismissal in a section 2-1401 proceeding is subject to *de novo* review, requiring no deference to the trial court's decision. *People v. Vincent*, 226 Ill. 2d 1, 18 (2007) ("when a court enters * * * a dismissal in a section 2–1401 proceeding, that order will be reviewed, on appeal, *de novo*").

¶ 36    Our supreme court has held that a "second post-judgment motion (at least if filed more than 30 days after judgment) is not authorized by either the Civil Practice Act or the rules of this court and must be denied." *Sears v. Sears,* 85 Ill. 2d 253, 259 (1981). It reasoned that there must be "finality" for the sake of "efficient administration of justice," and "[s]uccessive post-judgment motions interfere with that policy." *Id.* This is especially true where both motions raise the same issues. See *Kirk v. Kirk*, 85 Ill. App. 3d 805, 808 (1980) ("the trial court has no authority to grant relief under a section 72 [predecessor to section 2-1401] petition which raises the same issues as those raised in a previous section 72 petition").

¶ 37    Other courts, however, have held that because a motion to vacate under section 2-1401 is not a post-judgment motion, but rather a petition that starts a new proceeding (*Blazyk v. Daman Exp., Inc.,* 406 Ill. App. 3d 203, 206 (2010) ("Filing a section 2-1401 petition begins a new proceeding, in which the petition is the initial pleading.")), the successive post-judgment motion precedents are inapplicable, and there is no authority to support the conclusion that successive section 2-1401 motions are prohibited. See, e.g., *People v. Walker*, 395 Ill. App. 3d 860, 868 (2009) (holding that a prohibition on successive post-judgment motions is "puzzling," especially if

15

applied to section 2-1401 motions, because it would logically "require[] a conclusion that, not only is a second section 2-1401 petition improper, but so is a section 2-1401 petition filed by any party who also filed a postjudgment motion.")

¶ 38    We need not resolve this issue, because DiBartelo's motion to vacate under section 2-1401 fails for lack of evidentiary support and exercise of diligence. Section 2-1401(b) provides that the motion "must be supported by an affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2022). Specifically, DiBartelo was required to allege facts establishing the following: (1) "the existence of a meritorious defense"; (2) "due diligence in presenting this defense"; and (3) "due diligence in filing" the section 2-1401 motion. *Warren Cnty. Soil & Water Conservation Dist. v. Walters*, 2015 IL 117783, ¶ 51. These elements must be established by a preponderance of the evidence. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222 (1986). To demonstrate due diligence, the petitioner must "have a reasonable excuse for failing to act within the appropriate time." *Id*. "In determining the reasonableness of the excuse offered by the petitioner, all of the circumstances attendant upon entry of the judgment must be considered, including the conduct of the litigants and their attorneys." *Id.*

¶ 39    DiBartelo argues that he alleged a meritorious defense in the motion he filed on June 15, 2022, stating that he and Rooney had reached a settlement agreement for $18,000. DiBartelo also claims that filing the motion "only a few days beyond the 30-day limit of section 2-1301" is an "extraordinarily diligent filing under Section 2-1401," thereby demonstrating the requisite due diligence.

¶ 40    Assuming, without deciding, that DiBartelo was diligent in filing his section 2-1401 motion, a party has not exhibited due diligence when it refuses to participate in court proceedings leading up to the default judgment. In *Airoom,* for example, our supreme court declined to vacate

16

a default judgment under section 2-1401, finding that the defendant had demonstrated "negligence and indifference to or disregard of the circuit court's process." *Airoom, Inc.*, 114 Ill. 2d at 225. There, the defendant was sued for breach of contract after improperly installing a solar unit at the plaintiffs' home. *Id.* at 215. The defendant's sales and production managers were served with a summons and copy of the complaint, but the defendant did not file an appearance or an answer within the requisite 30 days. *Id.* The court subsequently defaulted the defendant and entered a judgment for $50,000 against it. *Id.* Five months later, the defendant filed a section 2-1401 motion to vacate, alleging that it failed to answer the complaint because it was improperly served on a sales manager, who "was not a duly authorized agent to receive process nor was he an officer or director or shareholder of said corporation[,]" and arguing that it had a meritorious defense concerning pre-existing structural defects in the home. *Id.* at 216. In response, plaintiffs alleged that defendant had not shown due diligence because it knew of the litigation but failed to answer or appear prior to the date of the default judgment. *Id*. at 218. Plaintiffs attached an affidavit from defendant's former employee, who said that "plaintiffs' lawsuit was common knowledge among the [defendant's] personnel and sales force." *Id*. at 219. In addition, the defendant's production manager admitted in his affidavit that he knew of the lawsuit but believed that the plaintiffs "were not going to proceed with the case" so long as the defendant "attempted to correct the problems." *Id.* at 220. Our supreme court found that the defendant was not diligent in defending the case, reasoning that the defendant "had ample opportunity to avoid default judgment by filing an answer or appearance," but refused to do so. *Id.* at 224. It also noted that section 2-1401 relief is not available where the defendant disregards the court's procedures "on the gamble that better results can be obtained through other procedures or at better cost." *Id.* (quoting *Abbell v. Munfield,* 76 Ill.

App. 3d 384, 388 (1979)). The court reasoned that if the defendant had kept up with court proceedings, "it would have known of the entry of the judgment." *Id.* at 225.

¶ 41    DiBartelo's section 2-1401 motion fails because it is not supported by an affidavit and because it fails to show due diligence in defending the action. Like the defendant in *Airoom*, who chose not to participate in the case (114 Ill. 2d at 223), DiBartelo chose not to participate here. He failed to file an appearance or respond to the initial complaint for almost two years. More importantly, the court continued the case at least ten times to give DiBartelo an opportunity to participate or to obtain counsel, but he repeatedly failed to do so. Although DiBartelo asserts that he believed he did not need to attend the May 5, 2022, hearing because a tentative settlement had been reached with Rooney, he failed to offer any evidentiary support in his section 2-1401 motion, either by affidavit or otherwise. In any case, his decision to disregard the ongoing litigation only to "gamble" on securing a better outcome "through other procedures" prevents him from making the showing of due diligence necessary to obtain relief under section 2-1401. *Id.* at 224. Furthermore, unlike in *Airoom,* where there was at least some evidence that the defendant was unaware of the default judgment hearing, the record here shows that DiBartelo was aware of the May 5, 2022, hearing date and just chose not to appear. Because DiBartelo sought to vacate the default judgment under section 2-1401 only after demonstrating "indifference to or disregard of the circuit court's process" and because he failed to provide a "reasonable excuse" for his lack of diligence as required for a successful section 2-1401 motion (*Airoom*, 114 Ill. 2d at 222, 225), the circuit court correctly denied his motion.

¶ 42    DiBartelo nevertheless argues that justice and good conscience require this Court to excuse his failure to exercise due diligence. However, "[r]elaxation of the due diligence requirement thereby entitling a defendant to a motion to vacate a judgment is justified only under extraordinary

18

circumstances." *Ameritech Pub. of Illinois, Inc. v. Hadyeh,* 362 Ill. App. 3d 56, 60 (2005). To meet this requirement, there must be circumstances which lead the court to conclude that one of the parties would gain an "unfair, unjust, or unconscionable advantage" if the default judgment is not vacated. *Airoom,* 114 Ill. 2d at 227. There is no evidence to support such a conclusion here. DiBartelo had every opportunity to avoid the default judgment, and the circuit court repeatedly indulged him by continuing the case at least ten times for him to appear and respond; he simply elected not to defend the lawsuit.

¶ 43    DiBartelo failed to attach an affidavit or otherwise support the factual allegations in his section 2-1401 motion and failed to exercise due diligence in defending the action. Therefore, his motion to vacate under section 2-1401 must fail. As such, there is no need to consider whether the circuit court erred in denying DiBartelo's motion to convert his section 2-1301 motion to a section 2-1401 motion as the motion would fail regardless.

¶ 44                                III. CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 46    Affirmed.

19